# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIRGINIA A. D'ADDARIO, Individually, and on behalf of the F. Francis D'Addario Testamentary Trust and the Virginia A. D'Addario Trust; and VIRGINIA A. D'ADDARIO, EXECUTRIX, as Executrix of the Probate Estate of Ann T. D'Addario, Deceased, and on behalf of the F. Francis D'Addario Testamentary Trust and the Ann T. D'Addario Marital Trust, | Case No.: 3:16-cv-00099 (JBA)<br><br><br><br>July 21, 2016 |
|                         Plaintiffs,<br>     vs.<br><br>DAVID D'ADDARIO; MARY LOU D'ADDARIO KENNEDY; GREGORY S. GARVEY; RED KNOT ACQUISITIONS, LLC; SILVER KNOT, LLC; and NICHOLAS VITTI,<br><br>                     Defendants. | |

## DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS TO DISMISS

Alfred U. Pavlis (ct06803)
Lauren Schreur
FINN DIXON & HERLING LLP
177 Broad Street, 15th Floor
Stamford, CT  06901-2689
Tel: (203) 325-5000
Fax: (203) 325-5001

*Counsel for David D'Addario, Mary Lou D'Addario, Silver Knot, LLC and Nicholas Vitti*

Brian E. Spears (ct14240)
Nathan Buchok (ct29132)
SPEARS MANNNING LLC
2425 Post Road, Suite 203
Southport, CT  06890
Tel: (203) 292-9766
Fax: (203) 292-9682

*Counsel for Defendants Gregory Garvey and Red Knot Acquisitions LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF PRIOR PROCEEDINGS .......................................................................... 2

ARGUMENT ........................................................................................................................... 6

I.     PLAINTIFFS' RICO CLAIMS MUST BE DISMISSED ...................................... 6

     A.    As Beneficiaries of the Estate, Plaintiffs Do Not Have Standing to Pursue Their RICO Action ........................................................................................ 6

     B.    Plaintiffs' RICO Claims Are Either Unripe or Time-Barred....................... 8

          1.    Plaintiffs' Injury Is Speculative and Their RICO Claim Has Not Yet Accrued ......................................................................................... 10

          2.    Any Concrete Injury to Plaintiffs Would Be Time-Barred ............. 13

     C.    Plaintiffs Have Failed to Plead the Requisite Elements of a RICO Claim ............... 14

          1.    The Plaintiffs' Failure to Adequately Plead "A Pattern of Racketeering Activity" is Fatal to Their RICO Claims Under Both 18 U.S.C. § 1962 (b) and (c) .................................................................................. 16

               a.    Plaintiffs Have Failed to Sufficiently Plead a Claim under 18 U.S.C. § 1962(b) .......................................................... 18

                    i.    Plaintiffs Have Failed to Link the Alleged Racketeering Activity to the Acquisition or Control of the Alleged Enterprise .......................................................... 19

                    ii.    Plaintiffs Have Failed to Allege a Separate Acquisition and Maintenance Injury .................................... 21

               b.    Plaintiffs Have Failed to Sufficiently Plead a Claim under 18 U.S.C. § 1962(c)............................................................ 22

                    i.    Plaintiffs Have Failed to Adequately Plead the Existence of an Association-in-Fact Enterprise ............ 24

                    ii.    Plaintiffs Have Failed to Adequately Allege an Enterprise Existed Separate and Apart from the Alleged Racketeering Acts .......................................................................... 27

iii.   Plaintiffs Have Failed to Allege that All of the Defendants Participated in the Operation or Management of the Enterprise ...................................................................................... 28

2.   Due to the Deficiencies in Their Substantive Claims, the Plaintiffs' Claim Under 18 U.S.C. § 1962(d) Must Also Be Dismissed.......................... 30

II.   IF PLAINTIFFS' RICO COUNT IS DISMISSED, THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CASE ....................................................... 30

A.   There Is Not Complete Diversity Between the Parties ................................ 31

B.   The Court Should Decline to Exercise Diversity Jurisdiction Pursuant to the Probate Exception ...................................................................................... 32

III.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT RIPE ................................................ 36

CONCLUSION ............................................................................................................. 38

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Amsterdam Tobacco Inc. v. Philip Morris Inc.*,
107 F. Supp. 2d 210 (S.D.N.Y. 2000) ..................................................................... 29

*Appeal of Ashmead*,
27 Conn. 241 (1858) ............................................................................................. 12

*Appeal of Vail*,
37 Conn. 185 (1870) ............................................................................................. 12

*Bankers Trust Co. v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988) ................................................. 6, 8, 9, 11, 12, 13, 14

*Beal Bank v. Galef*,
No. 3:09-CV-1401, 2010 WL 1332461 (D. Conn. Mar. 31, 2010) ......................... 34

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995) ......................................................................... 9, 13, 14

*Black Radio Network v. NYEX Corp.*,
44 F. Supp. 2d 565 (S.D.N.Y. 1999) ................................................................... 20

*Bosley v. Bosley*,
2008 WL 2048665 (M.D.P.A. May 12, 2008) ....................................................... 36

*Boyle v. United States*,
556 U.S. 938 (2009) ............................................................................................. 24

*Cadle Co. v. D'Addario*,
268 Conn. 441 (2004) ............................................................................................. 3

*Cadle Co. v. D'Addario*,
957 A.2d 536 (Conn. App. Ct. 2008) ........................................................... 5, 13, 37

*Cadle Co. v. D'Addario*,
No. 3:12-cv-00816-WGY (D. Conn. Jul. 22, 2014) ......................................... 5, 37

*Cadle Co. v. D'Addario*,
No. Civ.3:01CV1103, 2005 WL 3499998 (D. Conn. Dec. 20, 2005) ........... 5, 35, 36

*Caffrey v. Alcorn,*
  115 Conn. 605 (1932) ................................................................................ 35

*Cedar Swamp Holdings v. Zaman,*
  487 F.Supp.2d 444 (S.D.N.Y. 2007) ................................................ 25, 26, 27, 28

*Cedric Kushner Promotions, Ltd. v. King,*
  533 U.S. 158 (2001) ................................................................................. 23

*City of New York v. Smokes-Spirits.Com, Inc.,*
  541 F.3d 425 (2d Cir. 2008) ....................................................................... 24

*Coello v. Conagra Foods, Inc.,*
  No. 3:15-CV-83, 2015 WL 507580 (D. Conn. Feb. 6, 2015) ................................. 31

*Cofacredit, S.A. v. Windsor Plumbing Co., Inc.,*
  187 F.3d 229 (2d Cir. 1999) ....................................................................... 15

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
  187 F.3d 229 (2d Cir. 1999) ....................................................................... 30

*Cont'l Fin. Co. v. Ledwith,*
  No. 08 CIV. 7272PAC, 2009 WL 1748875 (S.D.N.Y. June 22, 2009) .............. 19, 20

*Cruden v. Bank of New York,*
  957 F.2d 961 (2d Cir. 1992) .................................................................. 6, 9, 10

*D.R.S. Trading Co., Inc. v. Fisher,*
  No. 01 CIV. 8028 (WHP), 2002 WL 1482764 (S.D.N.Y. July 10, 2002) ................. 17

*D'Addario v. D'Addario,*
  No. 278623, 1991 WL 59744 (Conn. Super. Ct. Mar. 14, 1991) ......................... 3, 4

*D'Addario v. D'Addario,*
  No. CV094027372, 2010 WL 2822035 (Conn. Super. Ct. Jun. 14, 2010) ............ 3, 15

*DeFalco v. Bernas,*
  244 F.3d 286 (2d Cir. 2001) ................................................................... 22, 29

*DeFazio v. Wallis,*
  500 F. Supp. 2d 197 (E.D.N.Y. 2007) ............................................................ 22

*Dornberger v. Metro. Life Ins. Co.,*
  961 F. Supp. 506 (S.D.N.Y. 1997) ................................................................ 21

iv

*Dymon v. Laffaye*,
  No. 3:12-CV-320, 2012 WL 774996 (D. Conn. Mar. 7, 2012) ......................................... 31, 32

*Estate of Thomas v. Wakefern Food, Corp.*,
  No. 3:12-CV-01723, 2012 WL 6212657 (D. Conn. Dec. 13, 2012) ................................. 31, 32

*Falise v. Am. Tobacco Co.*,
  94 F. Supp. 2d 316 (E.D.N.Y. 2000) ................................................................................. 30

*Firestone v. Galbreath*,
  976 F.2d 279 (6th Cir. 1992) ......................................................................................... 7, 8

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
  219 F. Supp. 2d 576 (S.D.N.Y. 2002) ................................................................................. 8

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) ........................................................................ 15, 24, 25, 26, 30

*Gaynor v. Payne*,
  261 Conn. 585 (2002) ....................................................................................................... 12

*Giardina v. Fontana*,
  733 F.2d 1047 (2d Cir. 1984) ........................................................................................... 35

*Goldfine v. Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y. 2000) ..................................................................... 14, 16, 27

*Groman v. Cola*,
  No. 07 CV. 2635, 2007 WL 3340922 (S.D.N.Y. Nov. 7, 2007) ......................................... 36

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ......................................................................................................... 16

*Hemi Group, LLC v. City of New York*,
  130 S. Ct. 983 (2010) ....................................................................................................... 24

*Holmes v. SIPC*,
  503 U.S. 258 (1992) ........................................................................................................... 7

*Johnson v. Smithsonian Inst.*,
  4 F. App'x 69 (2d Cir. 2001) ........................................................................................... 32

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ...................................................................................... 16

*King v. Wang*,
   No. 14 CIV. 7694 JFK, 2015 WL 4207076 (S.D.N.Y. July 13, 2015).............................. 17, 18

*Kottler v. Deutsche Bank AG*,
   607 F. Supp. 2d 447 (S.D.N.Y. 2009) .................................................................................. 28

*LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*,
   951 F. Supp. 1071 (S.D.N.Y. 1996) .................................................................................... 29

*Lefkowitz v. Bank of New York*,
   No. 01 Civ. 6252VM, 2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003).................. 17, 18, 33, 34

*Lesavoy v. Gattullo-Wilson*,
   170 F. App'x 721 (2d Cir. 2006) ......................................................................................... 15

*Lesavoy v. Lane*,
   304 F. Supp. 2d 520 (S.D.N.Y. 2004) ................................................................................. 15

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993) .................................................................................................. 30

*Marshall v. Marshall*,
   547 U.S. 293 (2006)................................................................................ 32, 33, 35, 36

*McDonough v. First Am. Title Ins. Co.*,
   No. 10-CV-106-SM, 2011 WL 285685 (D.N.H. Jan. 28, 2011) ............................................ 25

*Mercer v. Bank of New York Mellon, N.A.*,
   609 F. App'x 677 (2d Cir. 2015) .............................................................................. 33, 34, 35

*Moss v. Morgan Stanley, Inc.*,
   719 F.2d 5 (2d Cir. 1983) .................................................................................................... 15

*National Org. for Women v. Scheidler*,
   510 U.S. 249 (1994)................................................................................................. 19, 22

*Neiman Marcus Grp., Inc. v. Dispatch Transp. Corp.*,
   No. 09 CV 6861 NRB, 2011 WL 1142922 (S.D.N.Y. Mar. 17, 2011) ............................. 19, 20

*Pier Connection, Inc. v. Lakhani*,
   907 F. Supp. 72 (S.D.N.Y. 1995) ........................................................................................ 16

*Quaknine v. MacFarlane*,
   897 F.2d 75 (2d Cir. 1990) .................................................................................................. 21

*Rand v. Anaconda-Ericsson, Inc.*,
  794 F.2d 843 (2d Cir.), *cert denied*, 479 U.S. 987, 107 S. Ct. 579 (1986) ................................. 7

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ................................................................................................. 29

*Sacket v. Mead*,
  1 Conn. 13 (1814) ................................................................................................... 35

*Schrager v. Aldana*,
  542 F. App'x 101 (3d Cir. 2013) ....................................................................... 6, 7, 8

*St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*,
  409 F.3d 73 (2d Cir. 2005) .................................................................................... 32

*State Farm Mut. Auto. Ins. Co. v. Ammann*,
  828 F.2d 4 (9th Cir.1987) ...................................................................................... 9

*Stochastic Decisions, Inc. v. DiDomenico*,
  995 F.2d 1158 (2d Cir. 1993) .................................................................................. 8

*Tuscano v. Tuscano*,
  403 F. Supp. 2d 214 (E.D.N.Y. 2005) ..................................................................... 19

*United States Fire Ins. Co. v. United Limo. Serv. Inc.*,
  303 F. Supp. 2d 432 (S.D.N.Y. 2004) ............................................................... 19, 21

*United States v. Diaz*,
  176 F.3d 52 (2d Cir. 1999) .................................................................................... 29

*United States v. Turkette*,
  452 U.S. 576 (1981) ......................................................................................... 23, 27

*Waterman v. Canal–Louisiana Bank & Trust Co.*,
  215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909) ........................................................ 36

*Weizmann Inst. of Sci. v. Neschis*,
  229 F. Supp. 2d 234 (S.D.N.Y. 2002) ..................................................................... 17

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 S. Ct. 795 (1971) ............................................................................. 11

**Statutes**

18 U.S.C. § 1961 ...................................................................................................... 23

18 U.S.C. § 1962 ................................................... 6, 14, 15, 16, 19, 20, 21, 22, 23, 24, 29, 30

18 U.S.C. § 1964 ................................................................................................ 6, 10, 30

28 U.S.C. § 1331 ...................................................................................................... 30

28 U.S.C. § 1332 .................................................................................................. 30, 31

C.G.S.A. § 45a-175 ..................................................................................................... 12

C.G.S.A. § 45a-376 ..................................................................................................... 10

C.G.S.A. § 45a-382 ..................................................................................................... 35

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1, 32

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 14

**Treatises**

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure
§ 3610 (3d ed. 2016) .......................................................................................... 36

Ralph H. Folsom and Gayle B. Wilhelm, *Conn. Estates Practice Series, Probate Jurisdiction &*
*Procedure*, § 2:45 (2d ed. March 2016) ............................................................... 12

Defendants David D'Addario, Mary Lou D'Addario Kennedy, Gregory S. Garvey, Red Knot Acquisitions, LLC, Silver Knot, LLC and Nicholas Vitti (the "Defendants") respectfully submit this joint memorandum of law in support of their Motions to Dismiss Plaintiffs' First Amended Complaint [ECF No. 25] (the "Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This lawsuit is the latest salvo in Virginia D'Addario's longstanding effort to interfere with the administration of her father's estate.  Even though she received a generous monetary settlement from the Estate in 1987, in exchange for which she waived her right to participate in estate deliberations and decisions going forward, she has persisted in filing numerous motions in the Probate Court attacking the actions of her brother and his co-executors.  Her motions have consistently been rejected, both in the Probate Court and when she has appealed the decisions of the Probate Court to the Connecticut Superior Court.  Both the Probate Court and the Superior Court have noted that her endless motions and applications have imposed unnecessary costs on the Estate.

Unhappy with the results she has received in the Probate Court and Superior Court, Virginia D'Addario now seeks to bypass those courts and try a new forum.  Even though the Probate Court has ruled that it will hear and resolve her allegations of wrongdoing by the executors when the executors file the final accounting for the estate, she wants to dispense with that process and start anew in federal court.  Moreover, in seeking to move her campaign to federal court, she has taken a dispute between siblings over a parent's estate and attempted to

transform it into a RICO case in which she is accusing her brother, David, and sister, Mary Lou, as well as others, of being "racketeers."

As shown below, all of her claims fail as a matter of law and should be dismissed. The proper forum for Ms. D'Addario's grievances is the Probate Court.

## SUMMARY OF PRIOR PROCEEDINGS

Plaintiff Virginia D'Addario is a beneficiary of the estate of her father, F. Francis D'Addario (the "Estate"). She is the sister of defendants David D'Addario and Mary Lou D'Addario. David D'Addario has served as one of the executors of the Estate since his father's death. The Estate is currently the subject of a pending Connecticut Probate Court proceeding.

In 1987, shortly after her father's death, Virginia D'Addario entered into a settlement agreement (the "Settlement") with the Estate in order to obtain relief from $2,500,000 in debt that she personally owed to several banks. As part of the Settlement, the executors of the Estate agreed to have the Estate assume her debt to the banks and also advance her approximately $1,400,000. In exchange for these benefits, she gave a promissory note to the Estate in the amount of $3,900,000. Amended Complaint ¶ 17. She also agreed not to "participate in or take part in the Estate deliberations or decisions as regards the Estate or its property," and she waived "any and all rights in equity and in law which may now or hereafter exist in her favor against the Executors as regards their administration of the Estate and the validity of their decisions, including the rights to maintain a lawsuit of any nature against the Executors or the Estate . . . except for willful fraud, malfeasance or dishonesty." December 15, 2008 Memorandum of Decision at 2-3, appended as Exhibit A; Amended Complaint ¶ 17. Since the Settlement involved the payment of funds from the Estate, it was required to be submitted to the Probate Court, and the Probate Court approved it.

2

Notwithstanding the terms of the Settlement, Virginia D'Addario has spent the last twenty five years challenging (unsuccessfully) the actions of the Estate's executors at virtually every turn.  In 1991, the executors obtained a permanent injunction against her that prohibited her from pursuing four different law suits she had pending against the Estate at the time.  *See D'Addario v. D'Addario*, No. 278623, 1991 WL 59744 (Conn. Super. Ct. Mar. 14, 1991).  In 2008, Virginia D'Addario filed a motion to unseal the Estate's interim accountings, which was first denied by the Probate Court and then denied by the Superior Court.  *See D'Addario v. D'Addario*, No. CV094027372, 2010 WL 2822035 (Conn. Super. Ct. Jun. 14, 2010).  In 2009, Virginia D'Addario filed a complaint with the Probate Court Administrator's Office asking it to investigate the operations of the Trumbull Probate Court.  *See* Exhibit 1 to May 7, 2009 Memorandum of Decision, appended as Exhibit B.  Virginia D'Addario also moved to have the Estate transferred to the Complex Probate Docket, which motion was likewise denied.  May 7, 2009 Memorandum of Decision.  Finally, in 2014, Virginia D'Addario filed a motion to remove the executors.  Amended Complaint ¶ 106.  This motion was also denied.  *Id.*[1]

Virginia D'Addario filed all of these actions, including the one currently before this Court, despite the Settlement and the Probate Court's repeated determination that the Settlement deprived her of standing to assert almost all of these claims.  December 15, 2008 Memorandum of Decision at 4 ("It is the conclusion of this Court that in signing the 1987 Agreement, the Applicant forfeited her status as an heir and, therefore, can not participate in the decisions and deliberations of the Estate."); May 7, 2009 Memorandum of Decision at 3 ("This Court has

---

[1]  As discussed below, the Cadle Company also filed a motion to remove the executors, raising many of the same claims asserted by Virginia D'Addario in this case.  Cadle's motion was denied first by the Probate Court and later by the Superior Court after a four-day bench trial.  *Cadle Co. v. D'Addario*, 268 Conn. 441, 450 (2004).

3

issued at least two (2) prior opinions as to the Applicant's standing based on the 1987 Agreement.  The Court stands by those prior rulings.").

Virginia D'Addario persisted in filing motions in the Probate Court, including her motion to remove the executors, even after the Probate Court made clear in its rulings that it would hear her malfeasance claims against the executors once the final accounting for the Estate had been submitted.  December 15, 2008 Memorandum of Decision at 4 ("After all the Interim and/or Final Accountings have been heard but before the Court has ruled on the, the Applicant and/or her counsel may make written application to this Court to be heard on limited grounds of fiduciary dishonesty, willful fraud or malfeasance."); May 7, 2009 Memorandum of Decision at 5 ("When the accounts are finally unsealed and hearings held thereon, [the Executors'] actions will be subject to review and scrutiny.  Any breaches of their fiduciary duty by the Executors will lead to possible surcharges by this Court.").

Thus, contrary to Plaintiff's claim that David D'Addario has intentionally kept the Estate open (Amended Complaint ¶ 107), the Estate has remained open, in part, because of Virginia D'Addario's own frivolous litigation.  May 7, 2009 Memorandum of Decision at 4 ("The Court finds it ironic that the Applicant is complaining that the Estate has been open too long. . . . Much of the delay in the administration of this Estate has been caused by the Applicant's own actions."); *see also D'Addario*, 1991 WL 59744, at *4 ("With each new motion filed, the [executors] are put to expense and inconvenience, and the pendency of the actions deprives of finality their actions as executors.").

There is no question that the Estate has been open for an unusually long period.  This is due to the fact that the Estate's assets were always highly illiquid, consisting of numerous real

estate holdings that were subject to tax liens and environmental issues.  Amended Complaint ¶ 109.  Resolving these environmental and tax issues has been a complex and lengthy process.

The aggressive litigation tactics of the Cadle Company also contributed to delays in the probate process.  Like Virginia D'Addario, the Cadle Company filed numerous motions and lawsuits in the Probate Court, the Superior Court and this Court.  As discussed earlier, it filed a motion to remove the executors, which was denied.  It also filed actions for breach of fiduciary duty against the executors, which were rejected in state court and by Judge Nevas of this Court.  *Cadle Co. v. D'Addario*, 957 A.2d 536 (Conn. App. Ct. 2008); *Cadle Co. v. D'Addario*, No. Civ.3:01CV1103(AHN), 2005 WL 3499998 (D. Conn. Dec. 20, 2005).  Lastly, it filed a civil RICO action in this Court in 2012.  Judge Young found that Cadle's claims were not ripe given the ongoing probate proceedings.  *Cadle Co. v. D'Addario*, No. 3:12-cv-00816-WGY (D. Conn. Jul. 22, 2014), ECF No. 181, appended as Exhibit C ("this Court … determined that Cadle's federal and state claims at issue in this suit were not yet ripe").

In addition to the environmental issues impacting many properties, a significant impediment to the ability of the executors to sell assets and close the Estate was the tax liability owed to the Internal Revenue Service.  In April 2014, the Estate reached a settlement with the United States, which resolved the federal tax liability and accompanying liens and allows the executors to sell the remaining assets of the Estate.  *See Cadle Co. v. D'Addario*, No. 3:12-cv-00816-WGY (D. Conn. May 5, 2014), ECF No. 164-2, appended as Exhibit D.  The settlement, which was approved by the Probate Court, expressly requires the Estate to liquidate its remaining assets and settle its affairs.  The executors are now in the process of negotiating and completing sales of the remaining real estate properties and other assets of the Estate.

Taking a page from the Cadle Company's tactics, and relying on the same counsel that Cadle used for its RICO action, Virginia D'Addario has now filed on her own RICO case attacking the actions of her brother, David, and his co-executors.  In her Amended Complaint, she asserts six claims: (1) civil RICO claims against all Defendants pursuant to 18 U.S.C. §1962; (2) breach of fiduciary duty against David D'Addario as executor of the Estate; (3) breach of fiduciary duty against David D'Addario as trustee of three testamentary trusts established pursuant to the terms of his father's will; (4) aiding and abetting breach of fiduciary duty against all Defendants; (5) conspiracy to breach fiduciary duty against all Defendants and (6) unjust enrichment against David D'Addario (Counts Two through Six, the "State Law Claims").  For the reasons explained below, the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

### I.   PLAINTIFFS' RICO CLAIMS MUST BE DISMISSED

#### A.   As Beneficiaries of the Estate, Plaintiffs Do Not Have Standing to Pursue Their RICO Action

The civil RICO statute provides a right of action for "[a]ny person injured in his business or property by reason of a [RICO] violation…."  18 U.S.C. § 1964(c).  The Second Circuit has read this requirement literally, requiring a plaintiff to show (1) an injury in fact (2) to his/her business or property that was (3) caused by the defendant's RICO violation(s).  *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100 (2d Cir. 1988); *Cruden v. Bank of New York,* 957 F.2d 961, 978 (2d Cir. 1992).  In other words, a plaintiff must show that the injury to his/her business or property "was proximately caused by the defendant's racketeering activities."  *Schrager v. Aldana*, 542 F. App'x 101, 103-04 (3d Cir. 2013) (internal citations and quotations omitted).  Thus, a plaintiff alleging a civil RICO violation must "demonstrate a direct relation between the

injury suffered [to his/her business or property] and the alleged injurious conduct." *Holmes v. SIPC*, 503 U.S. 258, 268 (1992).

For this reason, Plaintiffs, as beneficiaries to an estate (like shareholders in a corporation) lack standing to bring a civil RICO suit based on any alleged injury to their expected inheritable interests. *Schrager*, 542 F. App'x at 104; *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992); *accord Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843 (2d Cir.), *cert denied*, 479 U.S. 987, 107 S. Ct. 579 (1986) (concluding shareholder of an injured corporation does not have standing to bring a civil RICO claim). Even though a beneficiary may suffer indirect injury to his/her expected inheritance from a defendant's RICO violations, the estate is the direct victim of the conduct and the party with standing to bring a civil RICO claim. *Schrager*, 542 F. App'x at 104 (concluding that estate, not its beneficiary, had standing to bring civil RICO claim because it was "the Estate that lost value due to the fraudulent activities" and the "direct victim . . . was the Estate, not [the beneficiary]").

In *Firestone*, the Sixth Circuit concluded that beneficiaries to a family trust, funded by the residuary assets in the decedent's estate, lacked standing to bring civil RICO claims because "[t]he estate suffered the direct harm; it, not the Family Trust, lost the property." 976 F.2d at 285. The *Firestone* plaintiffs alleged that by stealing from their legally incompetent grandmother during her lifetime, Defendants "decreased the size of [their grandmother's] estate, and consequently the size of their inheritance." *Id.* The Sixth Circuit rejected plaintiffs' claim that they had suffered an injury that could give them standing under Section 1964(c), stating that "the concept of direct injury refers to the relationship between the injury and the defendants' actions, not the plaintiffs' pocketbooks." *Id.*

7

Like in *Firestone* and *Shrager*, Plaintiffs here allege Defendants conspired to "plunder, pillage and loot the over $160,000,000 in assets" of the Estate.  Amended RICO Case Statement at 1-2.  As a result of this conduct, Plaintiffs in this case similarly allege injuries for loss of "the benefit of their interests in the Testamentary Trust, the Marital Trust and the Virginia trust, and their claims against the Estate . . . ." *Id.* at 66.  As the courts in *Firestone* and *Shrager* both concluded, this type of alleged injury, if true, would be the indirect result of injury to the business or property of the Estate and not the proximate result of any of Defendants' alleged RICO violations.  Accordingly, Plaintiffs lacks standing to bring a civil RICO claim and Count One of the Amended Complaint, "RICO Violations By All Defendants," should be dismissed.[2]

### B.    Plaintiffs' RICO Claims Are Either Unripe or Time-Barred

Plaintiffs contend that their claims are timely and ripe for prosecution based on the unfounded allegation that the Estate became insolvent within four years of the filing of their suit. Amended Complaint ¶ 4.  Plaintiffs cite three cases in support of this contention, none of which actually stands for this proposition.   To the contrary, under the civil RICO claim accrual principles outlined in these cases, Plaintiffs' claims are either unripe or time-barred.

In *Bankers Trust*, the Second Circuit explained that a cause of action for an injury "does not accrue until the plaintiff actually suffers that injury."  859 F.2d at 1103.  Injuries that "will

---

[2]  Plaintiffs' claim for collection expenses fails for the same reason.  Plaintiffs allege collection expenses in connection with "their unsuccessful efforts to enforce their claims against the Estate."  Amended Complaint ¶ 142(b).  If any injury to Plaintiffs' expected inheritance caused by Defendants' alleged RICO violations is too indirect to impart RICO standing, certainly any related collection expenses cannot qualify as an "injury" for RICO purposes.  In other words, any collection expenses Plaintiffs have incurred to-date would not be proximately caused by Defendants' alleged RICO violations, as required to create RICO standing.  *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166-67 (2d Cir. 1993) (concluding collection expenses incurred in plaintiff's attempt to obtain a judgment, which it then sought to collect from defendants, were unrecoverable because these expenses did not "stem from" and were not "proximately caused" by the alleged RICO violations).  Separately, where "the extent of the loss remains uncertain" and "collection efforts continue," as in this case, a plaintiff does not have standing to bring a RICO claim for collection expenses because the claim is not yet ripe.  *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 578 (S.D.N.Y. 2002).

not occur until some point in the future, are not [] actionable" until the plaintiff actually suffers injury to his/her business or property. *Id.* Similarly, where the amount and nature of the injury is undeterminable, the injury is speculative and a cause of action does not accrue. *Bankers Trust*, 859 F.2d at 1106; *see also Cruden*, 957 F.2d at 977 ("The type of injury required under §1964(c) cannot be said to have occurred where the damages arising from defendant's conduct are speculative or their amount and nature unprovable.") (internal citations and quotations omitted).

Once an injury has accrued, the Second Circuit has recognized "'a separate accrual' rule under which a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995) (citing *Cruden,* 957 F.2d at 977; *Bankers Trust,* 859 F.2d at 1102; *accord State Farm Mut. Auto. Ins. Co. v. Ammann,* 828 F.2d 4, 5 (9th Cir.1987)). "A necessary corollary of the separate accrual rule is that plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought." *Bingham*, 66 F.3d at 560; *see also Bankers Trust*, 859 F.2d at 1105 ("Under [the separate accrual] rule, each time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred. A plaintiff . . . must then bring his action within four years of this accrual to recover damages for the specific injury."). Thus, while the separate accrual rule permits a plaintiff who continues to incur separate and independent injuries from the underlying RICO violations to wait to sue until four years from the last injury, it does not permit that plaintiff to recover damages for injuries incurred outside the four-year window from when the suit was filed. *Bingham*, 66 F.3d at 560; *Bankers Trust*, 859 F.2d at 1105.

To avoid the clear ripeness and statute of limitations issues in this case, Plaintiffs attempt to tie their injuries to the Estate's alleged solvency status.[3]  *See* Amended RICO Case Statement, Section 4 at 46.  But there is simply no way the Estate's solvency status injures the Plaintiffs' business or property as required to create an actionable injury.  *See Cruden*, 957 F.2d at 977-78 (finding plaintiffs were not injured for purposes of RICO by defendants' fraudulent transfers until the defendants actually defaulted on their payment obligations to plaintiffs).  Any injury to Plaintiffs' "promised inheritable beneficial interests" amount (*i.e.*, what Plaintiffs believe they should have received from the Estate versus what they actually receive from the Estate), to the extent such an injury would even be cognizable under Section 1964(c)[4], is demonstrably speculative because the Estate is still open, making it impossible to determine what they will actually receive from the Estate.  To the extent Plaintiffs incurred some other injury to *their* property (opposed to the Estate's), their recovery would almost certainly be time-barred.  As Plaintiffs admit, nearly all of the specific conduct they allege "occurred a number of years ago," well outside the four-year statute of limitations period.  Amended RICO Case Statement, Section 4 at 46.

1.  Plaintiffs' Injury Is Speculative and Their RICO Claim Has Not Yet Accrued

Plaintiffs' Amended RICO Case Statement repeatedly identifies the Defendants' alleged RICO violations as injuring their "promised inheritable beneficial interests."  *See, e.g.,* Amended RICO Case Statement, Section 2(C) at 14 (asserting the Honeyspot Road Scheme "contributed to

---

[3]  This determination is entrusted by statute to the Probate Court, and the Probate Court has made no such finding. *See* C.G.S.A. § 45a-376.

[4]  Based on the allegations in the Amended Complaint, Plaintiffs appear to seek recovery individually, and not on behalf of the Estate.  Amended Complaint ¶¶ 125, 142.  As explained above, any diminution in the value of Plaintiffs' inheritance would be the indirect result of injury to business or property of the Estate, which is not Plaintiffs' "business or property," and is insufficient to create standing under Section1964(c).

10

the insolvency of the Estate, which has now left Plaintiffs unable to receive their promised inheritable beneficial interests"); *Id.* Section 4 at 46 (asserting Plaintiffs were injured when Estate became insolvent "because they were not able to receive their promised inheritable beneficial interests"); *Id.* Section 15 at 66 (asserting "Plaintiffs have been injured in their business or property by reason of the RICO violations described above in that Defendants have defrauded Plaintiffs out of the benefit of their interests in the Testamentary Trust, the Marital Trust and the Virginia Trust, and their claims against the Estate").

Any injury to Plaintiffs' "promised inheritable beneficial interests" is purely speculative at this point because the Estate has yet to close.  The plaintiffs in *Bankers Trust* made a similar RICO claim against a debtor in bankruptcy for the loss of a legitimate debt and related expenses. 859 F.2d at 1105.  In connection with this claim, the plaintiffs essentially sought to collect the difference between what they were going to receive versus what they would have received but for the debtor's illegal conduct.  *Id.* at 1105-06.  Because the debtor's bankruptcy estate was still open, the Second Circuit concluded that "Bankers' damages in this category are 'unrecoverable', at least at this time, because 'their accrual is speculative' and 'their amount and nature unprovable'."  *Id.* at 1106 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339, 91 S. Ct. 795, 806 (1971)).  The Second Circuit reasoned:

> [A]t this time, it is impossible to determine the amount of damages that would be necessary to make plaintiff whole, because it is not known whether some or all of the fraudulently transferred funds will be recovered by the corporation. Should they be recovered, Bankers would benefit along with BAC's other creditors and its injury would decrease. As a result, the damages in this area are "speculative" and "unprovable", *Zenith,* 401 U.S. at 339, 91 S.Ct. at 806; any claim for relief based on the lost-debt injury must therefore be dismissed without prejudice.

*Bankers Trust*, 859 F.2d at 1106.

For the same reasons, it is impossible to determine the amount and nature of any injury to Plaintiffs' "promised inheritable beneficial interests" at this time.  Since the Estate is still open, actively selling assets and resolving claims of creditors, the Court would be unable to calculate damages to the Plaintiffs (*i.e.*, the difference between what Plaintiffs should have received from the Estate versus what they actually receive from the Estate).  Moreover, the Probate Court has stated that it will hear and adjudicate Plaintiff's claims of executor wrongdoing when the final accountings are filed.  The Probate Court has also stated that it will surcharge the executors if they have engaged in wrongdoing and breached their fiduciary duties.[5]  To the extent there was any wrongdoing by the Defendants, the Probate Court could also give priority to Plaintiffs' interests in the Estate and pay Plaintiffs before satisfying any of Defendants' claims to the Estate.[6]

Under these circumstances, Plaintiffs' RICO claims are speculative and unripe and have yet to accrue.  *Bankers Trust*, 859 F.2d at 1106; *accord Cruden*, 957 F.2d at 977-78 (finding plaintiffs were not injured for purposes of RICO by defendants' fraudulent transfers until the defendants' actually defaulted on their payment obligations to plaintiffs).  This result is consistent with the conclusion reached by the Connecticut Appellate Court in a similar action

---

[5] C.G.S.A. § 45a-175 vests the Probate Court with jurisdiction over the interim and final accounts of estates, including testamentary trusts.  As part of this jurisdiction, the Probate Court has the power to determine the rights of the fiduciaries rendering the account and of the parties interested in the account.  *Gaynor v. Payne*, 261 Conn. 585, 596 (2002).  To enforce these rights, the Probate Court has the power to surcharge an executor or other fiduciary for any breach of trust.  *Id.* at 597.

[6] "Within the limits of their jurisdiction, Probate Courts have the power to apply equitable principles and enforce equitable rights or defenses."  Ralph H. Folsom and Gayle B. Wilhelm, *Conn. Estates Practice Series, Probate Jurisdiction & Procedure*, § 2:45 (2d ed. March 2016); *see also Appeal of Ashmead*, 27 Conn. 241, 248 (1858) ("A court of probate possesses higher power than a court of equity in the settlement of estates, for it is clothed with both legal and equitable authority for that purpose . . . .").  These equitable powers specifically include determining the priority of claims based on equitable considerations.  *Appeal of Ashmead*, 27 Conn. at 249; *Appeal of Vail*, 37 Conn. 185, 195 (1870) ("If there are trusts connected with the property, or liens upon it, or priorities enforceable in equity,- if through fraud, accident or mistake, a class of creditors or beneficiaries are entitled of right to relief as against other creditors or beneficiaries, he may marshal or distribute the assets so as to enforce or satisfy the right.").

brought by the Cadle Company.  *Cadle Co. v. D'Addario*, 957 A.2d at 539 (affirming trial court's dismissal of Cadle's complaint as unripe because "the existence of the plaintiff's injury [was] contingent on a determination of the priorities of the creditors of the decedent's estate, the final settlement of the estate and the absence of sufficient funds in the estate to satisfy the plaintiff's claim" making "any injury sustained by the plaintiff . . . hypothetical").

### 2. Any Concrete Injury to Plaintiffs Would Be Time-Barred

Even if there were some way the solvency status of the Estate could injure Plaintiffs' business or property, Plaintiffs' allegations make clear that they would have, or should have, discovered the Estate's solvency status and resulting injury to their "promised inheritable beneficial interests" when the Estate unsealed the interim accountings on October 3, 2011. Amended RICO Case Statement, Section 2(A) at 9.  Accordingly, Plaintiffs would have had to bring their action by October 3, 2015, and any damages incurred as a result of the Estate's solvency status are, therefore, time-barred.  *See Bingham*, 66 F.3d at 560; *Bankers Trust*, 859 F.2d at 1105.

Though Plaintiffs' RICO claims appear to rest on the alleged injury to their expected inheritance from the Estate, to the extent Plaintiffs incurred some other, concrete injury from the Defendants' conduct, these claims would almost all be time-barred.  Looking at the Alleged Wrongful Conduct identified in Section 2 of Plaintiffs' Amended RICO Case Statement, except for the alleged Silver Knot/Wise Metals Scheme and the Red Knot/David D'Addario Settlement Scheme, all of this conduct takes place well outside the four-year RICO statute of limitations. The last conduct in the Honeyspot Road Scheme took place in 1998.  Amended RICO Case Statement, Section 2(C) at 13.  The last conduct in the Frenchtown Road Scheme took place in 1999.  *Id.* Section 2(D) at 16.  The last conduct in the Red Knot Forbearance Agreement Scheme

13

took place in 2002.  *Id.* Section 2(E) at 27.  The last conduct related to the use and transfer of the

Estate's Residential Properties took place in 2011.  *Id.* Section 2(F) at 28.  Even with respect to

the alleged Silver Knot/Wise Metals Scheme and the Red Knot/David D'Addario Settlement

Scheme, most of the conduct described by Plaintiffs took place outside the four-year window

from the date, January 22, 2016, that Plaintiffs filed their complaint.

In short, to the extent Plaintiffs' Amended Complaint and Amended RICO Case

Statement can even be read to plead any concrete injury to Plaintiffs' business or property,

recovery for such injuries occurring prior to January 22, 2012 would be time-barred.  *Bingham*,

66 F.3d at 560; *Bankers Trust*, 859 F.2d at 1105.

### C.    Plaintiffs Have Failed to Plead the Requisite Elements of a RICO Claim

In addition to the various standing and procedural deficiencies set forth above, which

alone require dismissal of Plaintiffs' RICO claims, Plaintiffs have also failed to adequately plead

a RICO cause of action under 18 U.S.C. § 1962 (b), (c), or (d).  The Plaintiffs' claims amount to

little more than allegations of an ordinary fraud that the Plaintiffs have attempted to "dress-up"

as a RICO claim.  *See Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000)

("[C]ourts must always be on the lookout for the putative RICO case that is really nothing more

than an ordinary fraud case clothed in the Emperor's trendy garb.") (internal quotations omitted).

Accordingly, Count One of the Complaint must be dismissed pursuant to Fed. R. Civ. P.

12(b)(6).[7]

---

[7] As set forth more fully in Section II *infra*, because the Plaintiffs' RICO claims in Count One of the Amended
Complaint are the sole basis for federal question jurisdiction, dismissal of Count One warrants dismissal of the
entire Amended Complaint because there is no diversity jurisdiction in this case, and, even if there were, the Court
should decline to exercise its diversity jurisdiction pursuant to the Probate Exception to federal jurisdiction.

To state a claim that a defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, a plaintiff must allege the existence of seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962 (a)-(c)).  Courts have warned that "each subpart [of Section 1962] requires distinct elements and fact patterns and rarely can a defendant simultaneously violate all four."  *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004), *aff'd in relevant part and rev'd in part on other grounds*, *Lesavoy v. Gattullo-Wilson*, 170 F. App'x 721 (2d Cir. 2006).  Notwithstanding this admonition, Plaintiffs allege that the Defendants violated Sections 1962(b), (c), and (d).

Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . ."  Similarly, Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Finally, to state a claim under Section 1962(d), a plaintiff must allege a conspiracy to commit a substantive RICO violation pursuant to Section 1962 (a), (b), or (c).  A claim under Section 1962(d)  fails as a matter of law if the substantive claims based on the other subsections of Section 1962 are defective. *See, e.g., First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004); *Cofacredit, S.A. v. Windsor Plumbing Co., Inc.*, 187 F.3d 229, 244-45 (2d Cir. 1999).

Civil RICO is an "unusually potent weapon" and as such, Courts must look "with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purposes intended by Congress." *Goldfine*, 118 F. Supp. 2d at 397 (internal quotations omitted). "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997). Accordingly, "a court's focus must be to ensure that RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetuate the acts of racketeering." *Goldfine*, 118 F. Supp. 2d at 397 (internal quotations omitted).

      1.     <u>The Plaintiffs' Failure to Adequately Plead "A Pattern of Racketeering Activity" is Fatal to Their RICO Claims Under Both 18 U.S.C. § 1962 (b) and (c)</u>

In order to establish a claim under either Section 1962(b) or (c), the plaintiff must demonstrate that the defendants engaged in a "pattern or racketeering activity." 18 U.S.C. §§ 1962(b) and (c). To establish a "pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. "In determining whether continuity exists the court should not limit its consideration to the duration of the scheme, but should also look at the 'overall context in which the acts took place.'" *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 75 (S.D.N.Y. 1995).

Courts have uniformly and consistently held that conduct undertaken by a "discrete set of actors" directed at "a small group of victims" for a "limited purpose" is not sufficient to establish a pattern of racketeering activity.  *See, e.g., King v. Wang*, No. 14 CIV. 7694 JFK, 2015 WL 4207076, at \*7 (S.D.N.Y. July 13, 2015), *appeal filed*, *King v. Wang*, Nos. 15-2547(L), 15-2640 (XAP) (2d Cir. Aug. 19, 2015); *Lefkowitz v. Bank of New York*, No. 01 Civ. 6252VM, 2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003) (dismissing RICO claim that alleged a single scheme to defraud estates and their beneficiary), *aff'd in relevant part and rev'd in part on other grounds*, 528 F.3d 102 (2d Cir. 2007); *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 255-56 (S.D.N.Y. 2002) (dismissing RICO claim and finding lack of a pattern of racketeering activity where the allegations amounted to a single fraudulent scheme to gain control of a testator's estate); *D.R.S. Trading Co., Inc. v. Fisher*, No. 01 CIV. 8028 (WHP), 2002 WL 1482764, at \*4 (S.D.N.Y. July 10, 2002) ("When the fraudulent conduct alleged involves such a limited number of perpetrators, small number of victims, and limited goal, it cannot support a claim of open-ended or closed-ended continuity.").

For this reason, courts in this Circuit have routinely dismissed RICO complaints involving probate disputes substantially similar to the allegations in this case.  In *King v. Wang*, for example, the plaintiffs brought an action against their relatives and other third parties, alleging that the defendants engaged in racketeering activities to gain control of a deceased parent's estate.  2015 WL 4207076, at \*1-2.  The Court dismissed the complaint in its entirety, reasoning that the allegations "essentially concern the conduct of a discrete set of actors (a father and son, assisted in some instances by a narrow group of friends), directed at a small group of victims ([the plaintiffs], and possibly other Estate beneficiaries), and undertaken principally for

the limited purpose of gaining possession of a decedent's property." *Id.* at *7.  The court concluded that "Defendants' alleged scheme 'to denude the Estate of assets and misappropriate the Estate's and Plaintiffs' property' does not establish a pattern of racketeering activity as defined by the case law in this District." *Id.*

Similarly, in *Lefkowitz v. Bank of New York*, the beneficiary of several estates alleged that the executor and several law firms administering the estates engaged in racketeering activities in an effort to defraud the estates.   2003 WL 22480049, at *1.  The Court characterized the plaintiff's RICO claims as "essentially alleging that a small number of parties engaged in activities with a narrow purpose directed at a single or at most three victims: namely, defrauding [the plaintiff] and the estates of her parents." *Id.* at *9.  The Court held such allegations were insufficient to establish a pattern of racketeering activity. *Id.*

Here, like in *King* and *Lefkowitz*, the allegations involve the conduct of a discreet set of actors, *i.e.*, David D'Addario, assisted at times by a narrow group of third parties, directed at a small group of victims, *i.e.*, the plaintiffs and possibly other estate creditors, for the limited purpose of "plundering, pillaging and looting . . . the Estate."  Amended Complaint, *abid*.  In accordance with the precedent in this Circuit, these allegations are insufficient to establish a pattern of racketeering activity.  As such, all of the plaintiffs' RICO claims must be dismissed.

> a.    *Plaintiffs Have Failed to Sufficiently Plead a Claim under 18 U.S.C. § 1962(b)*

To state a claim under Section 1962(b), a plaintiff must allege that: "(1) the defendants engaged in a pattern of racketeering activity for the purpose of acquiring an interest in or maintaining control of an enterprise; (2) the defendants in fact acquired an interest in or maintained control of an enterprise through a pattern of racketeering activity; and (3) the plaintiff

suffered an injury as a result of the acquisition or control, separate and apart from any injuries attributable to the individual predicate acts of racketeering." *Neiman Marcus Grp., Inc. v. Dispatch Transp. Corp.*, No. 09 CV 6861 NRB, 2011 WL 1142922, at *8 (S.D.N.Y. Mar. 17, 2011).  In contrast to a Section 1962(c) claim, the enterprise under Section 1962(b) is the victim of the alleged unlawful activity. *National Org. for Women v. Scheidler*, 510 U.S. 249, 259 (1994) ("The 'enterprise' referred to in subsections (a) and (b) [of Section 1962] is thus something acquired through the use of illegal activities."). "The purpose of Section 1962(b) is to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." *United States Fire Ins. Co. v. United Limo. Serv. Inc.*, 303 F. Supp. 2d 432, 450 (S.D.N.Y. 2004) (internal quotations omitted).

As set forth in more detail below, the plaintiffs' Section 1962(b) suffers from the following deficiencies, any one of which is alone sufficient to warrant dismissal: (1) the plaintiffs have failed to allege a separate and distinct acquisition or maintenance injury; and (2) the plaintiffs have failed to link the alleged racketeering activity to the acquisition or control of the alleged enterprise.

> i.  Plaintiffs Have Failed to Link the Alleged Racketeering Activity to the Acquisition or Control of the Alleged Enterprise

Pursuant to Section 1962(b), a plaintiff must demonstrate that defendants acquired an interest in or maintained control of an enterprise through a pattern of racketeering activity.  *See, e.g.*, *Neiman Marcus Grp., Inc*. 2011 WL 1142922, at *9.  A plaintiff's "[f]ailure to link the commission of the predicate acts to the acquisition of the interest or control is fatal to a 1962(b) claim." *Cont'l Fin. Co. v. Ledwith*, No. 08 CIV. 7272PAC, 2009 WL 1748875, at *4 (S.D.N.Y. June 22, 2009) (citing *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 229 (E.D.N.Y. 2005).

Accordingly, courts have readily dismissed Section 1962(b) claims where the defendant's control of or interest in the enterprise "predated [the alleged racketeering] activity and remained unchanged throughout the duration of the alleged scheme." *Neiman Marcus Grp., Inc.*, 2011 WL 1142922, at *9.

Here, Plaintiffs make the conclusory allegation that Defendants engaged in a pattern of racketeering activity to "allow David D'Addario to acquire an interest in, and then maintain control over, the affairs of the Estate . . . ." Amended Complaint ¶ 124.1.  There are no allegations in the Amended Complaint, however, that any defendants other than David D'Addario ever gained any interest or control of the Estate through the use of a pattern of racketeering activity.  Moreover, the Amended Complaint contends that David D'Addario was an executor of the Estate in 1986, prior to the time the racketeering activity is alleged to have begun.  Amended Complaint ¶ 13.  Similarly, because the Estate remains open, David D'Addario would still be an executor having control over the Estate notwithstanding the alleged racketeering activity.

Accordingly, because David D'Addario's interest or control of the alleged enterprise predates the racketeering activity and would have continued despite the alleged racketeering activity, Plaintiffs have failed to plead the necessary link between the racketeering activity and the acquisition or maintenance of an interest or control of the enterprise.  Plaintiffs' Section 1962(b) claim must therefore be dismissed. *See, e.g.*, *Neiman Marcus Grp., Inc.*, 2011 WL 1142922, at *9; *Ledwith*, 2009 WL 1748875, at *4; *Black Radio Network v. NYEX Corp.*, 44 F. Supp. 2d 565, 579 (S.D.N.Y. 1999) (dismissing Section 1962(b) claim because "the defendants

did not need to engage in the alleged racketeering activity to maintain control of the alleged enterprise").

ii.    Plaintiffs Have Failed to Allege a Separate Acquisition and Maintenance Injury

"To state a claim under Section 1962(b), the plaintiff must allege an 'acquisition or maintenance injury' separate and apart from the injury suffered as a result of the predicate acts of racketeering." *United States Fire Ins. Co.*, 303 F. Supp. 2d at 450 (internal quotations omitted). It is "not sufficient merely to allege an injury caused by the predicate acts themselves . . . ." *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 525 (S.D.N.Y. 1997) (citing *Quaknine v. MacFarlane*, 897 F.2d 75, 82-83 (2d Cir. 1990)). Accordingly, "a plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance of an interest in or control of an enterprise." *Id.*

Here, Plaintiffs have failed to allege any injury that was caused by the Defendants' acquisition or maintenance of an interest or control of the enterprise. Rather, Plaintiffs claim they have suffered damages due to the Estate's alleged insolvency. The Estate's insolvency is alleged to have been caused by Mr. D'Addario's allegedly fraudulent conduct of "plundering, pillaging and looting" the Estate's assets. The fraudulent conduct through which Mr. D'Addario is alleged to have siphoned off the Estate's assets is the very same conduct which is alleged to constitute the predicate acts of racketeering.

Plaintiffs' Amended RICO Case Statement offers no cure to the Amended Complaint's deficient allegations. In the Amended RICO Statement, Plaintiffs have added reference to the alleged "sham Red Knot Forbearance Agreement" as "wrongful conduct" other than the predicate acts that caused her injury. Amended RICO Statement at 66. This statement is

21

perplexing, because Plaintiffs have alleged that the creation of Red Knot, the mailing of the Red

Knot Forbearance agreement, and a multitude of other transactions that allegedly make up the

"Red Knot Forbearance Scheme" are predicate acts of wire fraud.  Amended RICO Statement at

¶ 5 (1)(iv)(1)-(6); Amended Complaint ¶ 122.1(iv) (1)-(6).  Moreover, while Plaintiffs have

attempted to avoid the obvious, the clear import of the injury allegations in their Amended RICO

Statement is that their harm was caused by the insolvency of the Estate, which was caused by the

Predicate Acts.  *See* Amended RICO Statement ¶ 15.

Accordingly, Plaintiffs have failed to allege any injury caused by the acquisition or

maintenance of control of the enterprise that is separate and distinct from the injuries caused by

the predicate acts.  *See, e.g.*, *DeFazio v. Wallis*, 500 F. Supp. 2d 197, 209 (E.D.N.Y. 2007)

(dismissing RICO claim where there were no allegations that the "plaintiffs suffered injury that

is distinct from the financial injury caused by the alleged predicate acts of wire and mail fraud").

> b.    *Plaintiffs Have Failed to Sufficiently Plead a Claim under 18*
>       *U.S.C. § 1962(c)*

"To establish a violation of 18 U.S.C. § 1962(c) . . . a plaintiff must show (1) conduct (2)

of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d

286, 306 (2d Cir. 2001) (internal quotations omitted). "The requirements of section 1962(c) must

be established as to each individual defendant." *Id.*  Thus, to state a claim under Section

1962(c), a plaintiff must separately allege the existence and the conduct of an enterprise through

which the defendants committed their racketeering activity.  *See, e.g., National Org. for Women,*

*Inc.*, 510 U.S. at 259 (explaining for purposes of Section 1962(c), the term enterprise "connotes

generally the vehicle through which the unlawful pattern of racketeering activity is committed").

"The 'enterprise' is not the pattern of racketeering activity'; it is an entity separate and apart

from the pattern of racketeering activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

A RICO "enterprise" includes "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4).   Thus, the RICO enterprise may be a lawful entity or an association-in-fact.  The Supreme Court has explained that under RICO, an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," which must be proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583.  Moreover, a RICO enterprise is distinct from the people conducting the affairs of the enterprise.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001) (noting that plaintiff must "show[] that the defendants conducted or participated in the enterprise's affairs, not just their own affairs").  Thus, "[t]he existence of an enterprise remains a separate element which must be proved."  *Id.*

As set forth in more detail below, Plaintiffs' Section 1962(c) claim must be dismissed because: (1) Plaintiffs have failed to adequately allege the existence of an association-in-fact enterprise; (2) Plaintiffs have failed to adequately allege that an association-in-fact enterprise existed that was separate and apart from the alleged racketeering acts; (3) as to the Defendants Gregory S. Garvey, Red Knot Acquisitions, LLC, Silver Knot, LLC, Mary Lou D'Addario Kennedy, and Nicholas Vitti, Plaintiffs have failed to adequately allege that they participated in the operation or management of the organization itself.

        i.       **Plaintiffs Have Failed to Adequately Plead the Existence of an Association-in-Fact Enterprise**

As to their Section 1962(c) claim, the Plaintiffs allege that the Defendants constituted an association-in-fact enterprise.  Amended Complaint ¶ 124.2.  To establish an association-in-fact enterprise, a plaintiff must allege that the enterprise exhibited "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009); *see also First Capital*, 385 F.3d at 174 ("For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") (internal quotations omitted).

The Supreme Court has clarified that the "concept of 'associat[ion]' requires both interpersonal relationships and a common interest." *Boyle*, 556 U.S. at 946.  The "dual requirements of (1) distinctness and (2) the proof needed to demonstrate an association-in-fact, work in tandem to weed out claims dressed up as RICO violations but which are not in fact." *City of New York v. Smokes-Spirits.Com, Inc.*, 541 F.3d 425, 447 (2d Cir. 2008), *rev'd on other grounds sub nom., Hemi Group, LLC v. City of New York*, 130 S. Ct. 983 (2010).  To determine whether a complaint has adequately alleged an association-in-fact enterprise, the Second Circuit has directed that courts "look to the 'hierarchy, organization, and activities' of the association to determine whether 'its members functioned as a unit.'" *First Capital*, 385 F.3d at 174-75 (internal citations omitted).  To satisfy the enterprise element of a RICO claim, a plaintiff must allege that the defendants operated symbiotically and played necessary roles in the achievement

of a common purpose. *Cedar Swamp Holdings v. Zaman*, 487 F.Supp.2d 444, 450 (S.D.N.Y. 2007).

In light of this standard, courts in this Circuit have routinely held that "allegations that a common defendant perpetrated various independent frauds, each with the aid of a different co-defendant—do not satisfy the enterprise element of a RICO claim." *Id.* Allegations of such "hub and spoke" structures, which allege a relationship between a central figure and other parties, but fails to "allege any relationship between or among the [the other parties]" are not sufficient to establish a RICO enterprise. *McDonough v. First Am. Title Ins. Co.*, No. 10-CV-106-SM, 2011 WL 285685, at *5 (D.N.H. Jan. 28, 2011).

In *First Capital*, the Second Circuit addressed allegations similar to those made in the Amended Complaint here and affirmed the District Court's dismissal of the RICO count. 385 F.3d 159. The plaintiff in *First Capital*, a judgment creditor, alleged the existence of a RICO enterprise comprised of the family members, associates, and attorneys for a single lead defendant and organized for the purpose of "conceal[ing] [the defendant's] assets from his creditors." 385 F.3d at 174. In affirming the District Court's dismissal of the complaint, the Second Circuit reasoned that the plaintiffs had failed to "plead any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise." *Id.* Accordingly, the court concluded that the plaintiffs had failed to establish that the alleged enterprise was "an ongoing organization" or that the "various associates of the alleged enterprise functioned as a continuing unit." *Id.*

Similarly, in *Cedar Swamp Holdings v. Zaman*, the plaintiffs alleged the existence of a RICO enterprise which helped the two principal defendants defraud the plaintiffs. 487 F. Supp.

25

2d at 446.   In dismissing the complaint, the court reasoned that the plaintiff had failed to establish the existence of an enterprise-in-fact, as there was no evidence that the organization "operated according to any structure or hierarchy" or that, other than their involvement with principal defendants, the other members "had any relationship with each other."  *Id*. at 451.  In addition, the court found the enterprise allegations deficient because there was no allegation that the participants in each of the schemes acted for the benefit of participants in the other alleged schemes.  *Id.*  451-52.  Ultimately, the court concluded that the complaint must be dismissed as there was "no indication that this group was an 'ongoing organization' as opposed to an *ad hoc* collection of entities and individuals who each happened to have been involved in one scheme or another against [the plaintiffs]." *Id*.

Here, like *First Capital* and *Cedar Swamp Holdings*, the allegations in the Amended Complaint establish no more than a hub-and-spoke structure that is insufficient to qualify as an enterprise under RICO.   At most, the Amended Complaint alleges that David D'Addario committed various fraudulent "schemes" for his own benefit, each with the assistance of other co-defendants.  There are no allegations that the enterprise operated according to any structure or hierarchy.  There are no allegations that the other participants had any relationship with each other or that the participants in the various alleged schemes ever acted for the benefit of participants—other than David D'Addario—in the other alleged schemes.

The Amended Complaint finds no support in Plaintiffs' Amended RICO Statement.  The Amended RICO Statement includes sections purportedly addressing the nature and structure of the alleged enterprise, the employees, officers and directors of the enterprise, and their association and relationships to the enterprise.  Amended RICO Statement at iv, 62-64.  Yet,

26

apart from referencing David D'Addario, these sections fail to even mention any other defendant by name and offer no description of the structure or the relationships between the defendants. *See* Amended RICO Statement at 62-64.[8]  Absent any allegations of a hierarchal structure or allegations explaining the roles of the Defendants and their relationships between themselves and with the alleged enterprise, Plaintiffs' RICO claims are fatally defective.

Accordingly, Plaintiffs have failed to allege the existence of an enterprise-in-fact and their Section 1962(c) claim must be dismissed.  *See e.g.*, *Cedar Swamp Holdings*, 487 F. Supp. 2d at 451 ("[A]n allegation that the perpetrator of a series of independent fraudulent transactions used a different accomplice to aid each transaction is insufficient to justify a conclusion that the perpetrator and the accomplices together constituted an ongoing organization or functioned as a continuing unit.").

        ii.       **Plaintiffs Have Failed to Adequately Allege an Enterprise Existed Separate and Apart from the Alleged Racketeering Acts**

In order to prove a violation of RICO, a plaintiff must "prove both the existence of an 'enterprise' and the connected "pattern of racketeering activity."' *Turkette*, 452 U.S. at 583.  As the Supreme Court has made clear, "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.  The existence of an enterprise at all times remains a separate element which must be proved by the [plaintiff]." *Id.*  Accordingly, a RICO claim must be dismissed where the "[d]efendants and co-conspirators did not exist as an association in fact separate and apart from the alleged RICO activity" but

---

[8] The Amended RICO Case Statement's section on the Enterprise contains one reference to defendants other than David D'Addario—a single paragraph that asserts in the most conclusory manner that Vitti and, "on occasion," Garvey assisted David D'Addario in the activities of the Enterprise.  *See* Amended RICO Case Statement at 61. This falls far short of meeting the exacting standards to which federal courts have held plaintiffs seeking to invoke the civil RICO statute.  *See, e.g., Goldfine*, 118 F. Supp. 2d at 397 (Courts must look "with particular scrutiny at Civil RICO claims to ensure that the Statute is used for the purposes intended by Congress").

rather "came together strictly for the purpose of [committing the alleged racketeering activity]." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009) (holding that "[t]he non-existence of a separate enterprise is fatal to Plaintiffs' RICO claim").

Here, Plaintiffs have failed to allege that the enterprise existed separate and apart from the commission of the predicate acts.  To the extent Plaintiffs have alleged that the Defendants came together at all, which, as set forth above, the Defendants contend they have not, the allegations demonstrate that the alleged enterprise came together solely to commit the predicate acts.  Indeed, the very name Plaintiffs have chosen to give the alleged enterprise—"the David D'Addario Control Enterprise"— itself conveys that the alleged enterprise came together strictly for the purpose of committing the predicate acts alleged in the Amended Complaint.  *See, e.g.,* Amended RICO Statement at 61-64.  Plaintiffs' failure to allege the existence of an enterprise separate from the alleged predicate acts is fatal to their RICO claims. *See Cedar Swamp Holdings,* 607 F. Supp. 2d at 459.

        iii.    Plaintiffs Have Failed to Allege that All of the Defendants Participated in the Operation or Management of the Enterprise

As set forth in detail above, there are multiple deficiencies in Plaintiffs' RICO allegations which warrant dismissal of their claims in their entirety.  Even if the Court declines to dismiss the RICO claims in their entirety, however, the RICO allegations against Mr. Garvey, Red Knot Acquisitions, LLC, Silver Knot, LLC, Ms. D'Addario Kennedy, and Mr. Vitti must nevertheless be dismissed as the Plaintiffs have failed to allege that these defendants participated in the operation or management of the enterprise itself.

Liability under Section 1962(c) only attaches to those individuals who "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity . . . ." 18 U.S.C.A. § 1962 (c).  Thus, "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  In order to establish liability under Section 1962(c) the plaintiff must show that the defendant had "discretionary authority in carrying out the instructions of [the enterprise's] principals," *United States v. Diaz*, 176 F.3d 52, 93 (2d Cir. 1999) or "played some part in directing the affairs of the [RICO enterprise.]" *DeFalco v. Bernas*, 244 F.3d 286, 311 (2d Cir. 2001).

As the Second Circuit has recognized, "[s]imply alleging that certain entities provide services which are helpful to an enterprise without any allegations that those entities exert any control over the enterprise does not sufficiently allege a claim under RICO against those entities." *Smokes-Spirits.com, Inc.*, 541 F.3d at 449; *see also*, *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 217 n.10 (S.D.N.Y. 2000) (the RICO statute does not "encompass 'mere involvement in or assistance to' an illegal enterprise or 'aiding and abetting' others in an illegal enterprise") (*quoting Reves v. Ernst & Young*, 507 U.S. at 170, 177-79 (1993)).  Ultimately, the operation and management test "is a very difficult test to satisfy." *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996).

Here, the Plaintiffs have failed to allege that defendants Garvey, Red Knot, Silver Knot, D'Addario Kennedy or Vitti played any part in directing the affairs of the alleged "David D'Addario Control Enterprise," or had any discretionary authority in carrying out instructions of the principals.  At most, the allegations in the Amended Complaint amount to a claim that these individuals provided services that were helpful to the enterprise or aided and abetted Mr.

D'Addario in carrying out his allegedly fraudulent goals.  Such allegations are not sufficient to establish liability under Section 1962(c) and Plaintiffs' RICO claims against these defendants must be dismissed.

    2. <u>Due to the Deficiencies in Their Substantive Claims, the Plaintiffs' Claim Under 18 U.S.C. § 1962(d) Must Also Be Dismissed.</u>

"To establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999).  "'Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."'  *Falise v. Am. Tobacco Co.*, 94 F. Supp. 2d 316, 353 (E.D.N.Y. 2000) (*quoting Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993)); *see also*, *First Capital*, 385 F.3d at 182 (dismissing plaintiff's conspiracy claim under 1962(d) because they did not "adequately allege a substantive violation of RICO").

Here, the Plaintiffs have failed to adequately allege a violation of the substantive provisions of Section 1962 for the reasons set forth above.  Accordingly, their claims under Section 1962(d), which are entirely reliant on their deficient allegations regarding the substantive provisions of Section 1962, must also be dismissed.

**II. IF PLAINTIFFS' RICO COUNT IS DISMISSED, THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CASE**

The Amended Complaint alleges that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) based on Plaintiffs' civil RICO claims.  Amended Complaint ¶ 5.  The Amended Complaint also alleges that the Court has diversity jurisdiction under 28 U.S.C. § 1332.  *Id.*  However, this Court does not have diversity jurisdiction over this case because (1) there is not complete diversity between the parties; and because of (2) the

probate exception to federal diversity jurisdiction.  Plaintiffs' only federal claim is Count One for

civil RICO violations, which should be dismissed for the numerous reasons discussed above.

Plaintiffs rely on the Court's diversity and supplemental jurisdiction over the remaining State

Law Claims.  Thus, if the Court dismisses Plaintiffs' civil RICO claims, this Court will lack

subject matter jurisdiction over the case and must dismiss Plaintiffs' remaining State Law

Claims.

### A.    There Is Not Complete Diversity Between the Parties

Virginia D'Addario brought this action in her individual capacity and in her official

capacity as executrix of the estate of Ann T. D'Addario.  Amended Complaint ¶ 3.  Thus, for

purposes of diversity jurisdiction, she must establish the citizenship of herself both in her

individual capacity and in her official capacity as executrix.  *Coello v. Conagra Foods, Inc.*, No.

3:15-CV-83 (CSH), 2015 WL 507580, at *2 (D. Conn. Feb. 6, 2015); *Estate of Thomas v.

Wakefern Food, Corp.*, No. 3:12-CV-01723 (CSH), 2012 WL 6212657, at *3 (D. Conn. Dec. 13,

2012); *Dymon v. Laffaye*, No. 3:12-CV-320 (CSH), 2012 WL 774996, at *2 (D. Conn. Mar. 7,

2012).  Pursuant to Section 1332(c)(2), the legal representative of an estate is "deemed to be a

citizen only of the same State as the decedent."

Plaintiffs' complaint ignores this statutory definition and erroneously states that "Plaintiff

Virginia A. D'Addario, Executrix, is a citizen of California" based on Ms. D'Addario's

individual citizenship.  Amended Complaint ¶¶ 7.1, 7.2.  As indicated in the Amended

Complaint, the decedent, Ann T. D'Addario, was a citizen of Connecticut.  *Id.* at ¶ 7.2

(explaining Ms. D'Addario was appointed an executrix of the estate of Ann T. D'Addario by the

Probate Court of Trumbull, Connecticut); ¶ 11 ("Mr. D'Addario and his wife, Ann T. D'Addario,

lived in Trumbull, Connecticut, where they raised five children . . . .").  Thus, contrary to

31

Plaintiffs' allegation in ¶ 7.2 of the Amended Complaint, plaintiff Virginia D'Addario, executrix, is a citizen of the state of Connecticut.  Section 1332(c)(2); *see also Johnson v. Smithsonian Inst.*, 4 F. App'x 69, 71 (2d Cir. 2001) (explaining that "a representative of the [] estate is deemed for diversity purposes to have the citizenship possessed by the decedent").

Because plaintiff Virginia D'Addario, executrix, is a citizen of the state of Connecticut and defendants Silver Knot, LLC, and Nicholas Vitti are also citizens of Connecticut (see Amended Complaint ¶¶ 8.5 and 8.6), there is not complete diversity between the parties and the Court lacks diversity jurisdiction over this case.  *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("It is well established that for a case to fit within [§ 1332], there must be 'complete' diversity."); *see also Estate of Thomas*, 2012 WL 6212657, at *3 (explaining court would lack diversity jurisdiction if citizenship of plaintiff in representative capacity destroyed complete diversity); *Dymon v. Laffaye*, 2012 WL 774996, at *1-2 (same).

Accordingly, if the Court dismisses Plaintiffs' civil RICO claims, this Court will lack subject matter jurisdiction over the case and must dismiss Plaintiffs' remaining State Law Claims pursuant to Fed. R. Civ. P. 12(b)(1).

**B.**     **The Court Should Decline to Exercise Diversity Jurisdiction Pursuant to the Probate Exception**

Even if the Court did have diversity jurisdiction in this matter, the Court should decline to exercise that jurisdiction pursuant to the Probate Exception to federal diversity jurisdiction.  *See Marshall v. Marshall*, 547 U.S. 293 (2006).  Under the Probate Exception, a federal court cannot exercise diversity jurisdiction where: (1) the action involves "the probate or annulment of a will [or] the administration of a decedent's estate"; or (2) the action would require the court to

"endeavor[] to dispose of property that is in the custody of a state probate court." *Marshall*, 547 U.S. at 311-12.  While the Probate Exception does not generally preclude a federal court from exercising diversity jurisdiction over widely recognized torts when a plaintiff seeks an *in personam* judgment (see *Marshall*, 547 U.S. at 312), when "the federal court would have to assert control over property that remains under the control of the state courts" to provide relief, the case should be dismissed. *Lefkowitz v. Bank of New York*, 528 F.3d 102, 107 (2d Cir. 2007). Looking at Plaintiffs' claims and requested relief in this case, the Court's exercise of jurisdiction would necessarily interfere with the administration of the Estate and require the Court to endeavor to value and dispose of property currently in the custody of the Connecticut Probate Court.  Accordingly, if Plaintiffs' RICO claims are dismissed, their State Law Claims (Counts Two through Six) must also be dismissed pursuant to the Probate Exception to diversity jurisdiction. *See Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677 (2d Cir. 2015).

  In this case, this Court's entertainment of Plaintiffs' State Law Claims would directly interfere with the Probate Court's administration of the Estate.  Plaintiff's standing to bring claims was severely restricted by the Settlement she reached with the Estate in 1987.  The Settlement was subject to the jurisdiction and approval of the Probate Court, and the Probate Court has been supervising Plaintiff's standing since 1987.  After the numerous attempts by Virginia D'Addario to interfere with the administration of the Estate, the Probate Court determined that, pursuant to the terms of the Settlement, the Probate Court would only hear Virginia D'Addario's fraud and malfeasance claims once the final accounting for the Estate had been submitted.  December 15, 2008 Memorandum of Decision at 4 ("After all the Interim and/or Final Accountings have been heard but before the Court has ruled on the, the Applicant

and/or her counsel may make written application to this Court to be heard on limited grounds of fiduciary dishonesty, willful fraud or malfeasance.").  The Probate Court also made clear that "[w]hen the accounts are finally unsealed and hearings held thereon, [the Executors'] actions will be subject to review and scrutiny.  Any breaches of their fiduciary duty by the Executors will lead to possible surcharges by this Court."  May 7, 2009 Memorandum of Decision at 5. Accordingly, this Court's entertainment of the State Law Claims would directly interfere with two standing decisions of the Probate Court related to its administration of the Estate.

Further, "[a]lthough Plaintiffs have styled their claims in this case as 'in personam' claims against Defendants" the Court "must examine the substance of the relief that Plaintiffs are seeking, and not the labels they have used" to determine whether their action would require the Court to exercise control over the Estate in such a manner as to interfere with the Probate Court's control over it.  *Mercer*, 609 F. App'x at 679.  Though the Amended Complaint lists David D'Addario as a defendant in his individual capacity, Counts Two and Three are against David D'Addario as executor of the Estate and trustee of the Testamentary Trust, the Marital Trust and the Virginia Trust.  Amended Complaint at 59, 60.  In suing defendant David D'Addario in his official capacity as executor of the estate and trustee, Plaintiffs' complaint seeks to reach property in custody of the probate court.  *See Beal Bank v. Galef*, No. 3:09-CV-1401(JCH), 2010 WL 1332461, at *4 (D. Conn. Mar. 31, 2010) ("In suing [defendant] in her capacity as executrix, [plaintiff's] claim can be construed as a claim against the estate itself.  It therefore seeks to 'reach a res in custody of state court' and is 'purely a probate matter.'") (quoting *Lefkowitz*, 528 F.3d at 106).

34

Additionally, like in *Mercer*, the relief that Plaintiffs request, aside from punitive damages and attorney's fees, is the restoration of funds and assets they allege were improperly diverted from the Estate and its trusts.  Amended Complaint ¶ 142.  Under these circumstances, the Court's exercise of jurisdiction in this case would necessarily interfere with the disposition of property that is in the custody of the probate court.  *See Mercer*, 609 F. App'x at 680; *Marshall*, 547 U.S. at 312.  This is the same conclusion that Judge Nevas reached in a similar action brought by the Cadle Company.  *See Cadle Co.*, 2005 WL 3499998, at *2 (dismissing state law claims for, among other things, breach of fiduciary duties and unjust enrichment because the court could not consider these claims "without interfering with the ongoing probate proceedings").

Finally, if Plaintiffs' State Law Claims were to proceed, the Court would necessarily have to value the Estate's assets and liabilities in order to determine the merits of the core premise underlying all of Plaintiffs' claims – whether or not the Estate is solvent.[9]  As Judge Nevas found in the *Cadle* action, undertaking such an accounting would necessarily interfere with the Connecticut Probate Court's proceedings.  *Cadle Co.*, 2005 WL 3499998, at *3; *see also Giardina v. Fontana*, 733 F.2d 1047, 1050-51 (2d Cir. 1984) ("requiring an accounting . . . would interfere with the Florida probate court's control and disposition" of the estate's property).

As Judge Nevas reasoned:

> Without a final accounting, the court would have great difficulty determining the
> core issues in this case—whether the Co–Executors have breached their fiduciary
> duties in their management of the Estate and whether the Beneficiaries have
> improperly benefitted from these actions. For example, Cadle's claim that the Co–

---

[9] Until a probate court determines otherwise, all estates are presumed to be solvent.  *Sacket v. Mead*, 1 Conn. 13, 18 (1814); *Caffrey v. Alcorn*, 115 Conn. 605 (1932).  It is worth noting that if, as Plaintiff claims, the Estate were insolvent, Connecticut law would prevent her from bringing suit against the fiduciary of the Estate until it is settled as such.  *See* C.G.S.A. § 45a-382.

Executors failed "to liquidate the Estate's assets in a timely manner to pay off the Estate's debts" would be difficult to determine without the benefit of a detailed and final accounting of the Estate's assets and distributions, something this court could not order without impermissibly interfering with the authority of the probate court. *See Waterman v. Canal–Louisiana Bank & Trust Co.,* 215 U.S. 33, 45, 30 S.Ct. 10, 54 L.Ed. 80 (1909) (only a probate court can order an accounting of an estate). The court cannot determine whether a breach of fiduciary duty occurred merely by looking at isolated transactions. It must view the challenged transactions as much as possible in the context of the entire probate process.

*Cadle Co.*, 2005 WL 3499998, at *3.

The *Marshall* decision did not alter this fundamental principal.  *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3610 (3d ed. 2016); *Bosley v. Bosley*, 2008 WL 2048665, at *3 (M.D.P.A. May 12, 2008) ("courts have held that an action requesting an accounting generally falls within the ambit of 'direct interference with the assets of an estate'"); *see also Marshall*, 547 U.S. at 311-12 (citing *Waterman* and acknowledging that "the probate exception reserves to state probate courts . . . the administration of a decedent's estate").  Thus, because adjudicating Plaintiffs' State Law Claims would require an accounting of the Estate, a function clearly reserved to the Probate Court, their State Law Claims fall under the Probate Exception to federal diversity jurisdiction and should be dismissed. *See Groman v. Cola*, No. 07 CV. 2635(RPP), 2007 WL 3340922, at *5 (S.D.N.Y. Nov. 7, 2007) (dismissing action pursuant to Probate Exception because action was "at heart, a dispute about the proper valuation of an estate asset in a sale by the Estate's executors").

## III.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT RIPE

As detailed above in Section I(B)(1) with respect to Plaintiffs' RICO claims, any injury to Plaintiffs' "promised inheritable beneficial interests" is purely speculative at this point because the Estate has yet to close.  The Estate is still liquidating assets and settling claims with creditors.  The Probate Court has specifically told Virginia D'Addario that it will hear her fraud

and malfeasance claims once the final accounting for the Estate has been submitted.  December 15, 2008 Memorandum of Decision.  The Probate Court also made clear that, at that time, it will consider surcharging the executors to the extent any breach of fiduciary duty is proven.  May 7, 2009 Memorandum of Decision at 5 ("When the accounts are finally unsealed and hearings held thereon, [the Executors'] actions will be subject to review and scrutiny.  Any breaches of their fiduciary duty by the Executors will lead to possible surcharges by this Court.").  If the Probate Court determines there was misconduct by the executors, it could then give priority to Plaintiffs' interests in the Estate and pay Plaintiffs before satisfying any of Defendants' claims to the Estate.

Accordingly, any injury to Plaintiffs by Defendants' alleged (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) conspiracy to breach fiduciary duty; and (4) unjust enrichment is purely speculative at this point given the remedies that are available, and the potential recoveries that may occur, through the probate proceedings.  For the same reasons that Cadle's state law claims were found not to be ripe, Plaintiffs' State Law Claims should be dismissed as unripe.  *See Cadle Co.*, 957 A.2d at 539 (affirming trial court's dismissal of Cadle's complaint as unripe because "the existence of the plaintiff's injury [was] contingent on a determination of the priorities of the creditors of the decedent's estate, the final settlement of the estate and the absence of sufficient funds in the estate to satisfy the plaintiff's claim" making "any injury sustained by the plaintiff . . . hypothetical"); Order at 2, *Cadle Co. v. D'Addario*, No. 3:12-cv-00816-WGY (D. Conn. Jul. 22, 2014), ECF No. 181 ("On July 21, 2014, this Court held a motion session, at which time it confirmed that state probate procedures to settle claims against the Estate, including Cadle's, were still ongoing, and determined that Cadle's federal and state claims at issue in this suit were not yet ripe.").

37

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice for lack of subject-matter jurisdiction and failure to state any claim upon which relief can be granted.

FINN DIXON & HERLING LLP

By: /s/ Alfred U. Pavlis

Alfred U. Pavlis (ct06803)
FINN DIXON & HERLING LLP
177 Broad Street, 15th Floor
Stamford, CT  06901-2689
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com

*Attorneys for Defendants David D'Addario, Mary Lou D'Addario Kennedy, Silver Knot, LLC and Nicholas Vitti*

SPEARS MANNNING LLC

By: /s/ Brian E. Spears

Brian E. Spears (ct14240)
2425 Post Road, Suite 203
Southport, CT  06890
Tel: (203) 292-9766
Fax: (203) 292-9682
E-mail: bspears@spearsmanning.com

*Attorneys for Defendants Gregory Garvey and Red Knot Acquisitions LLC*

## CERTIFICATION

I hereby certify that on July 21, 2016, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Alfred U. Pavlis
Alfred U. Pavlis (ct06803)
FINN DIXON & HERLING LLP
177 Broad Street, 15th Floor
Stamford, CT  06901-2689
Tel: (203) 325-5000
Fax: (203) 325-5001
E-mail: apavlis@fdh.com