```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT


_____
VIRGINIA D'ADDARIO, ET AL.,    )
               Plaintiffs,     ) No: 3:16-CV-99 (JBA)
                               )
     v.                        ) JANUARY 18, 2019
DAVID D'ADDARIO, ET AL.,       )
               Defendants.     ) 1:40 p.m.
_____)
                          141 Church Street
                          New Haven, Connecticut



                 TELEPHONIC SCHEDULING CONFERENCE



B E F O R E:

          THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
```

```
                     TRACY L. GOW, RPR
                   Official Court Reporter
                    141 Church Street
                   New Haven, CT 06510
                      203.910.0323
                 Tracy_Gow@ctd.uscourts.gov
```

```
 1   A P P E A R A N C E S:

 2   For the Plaintiffs:
          F. DEAN ARMSTRONG, ESQ.
 3        Armstrong Law Firm
          1324 Dartmouth Rd.
 4        Flossmoor, IL 60422
          708-798-1599
 5        Email: armstronglaw@sbcglobal.net

 6        EDWARD C. TAIMAN, JR., ESQ.
          Sabia Taiman, LLC
 7        450 Church Street
          Hartford, CT 06103-1107
 8        860-541-2077
          Email: etaiman@sabialaw.com

 9

10   For the Defendants:
          TONY MIODONKA, ESQ.
11        Finn Dixon & Herling LLP
          6 Landmark Square, Suite 600
12        Stamford, CT 06901
          203-325-5000
13        Email: tmiodonka@fdh.com

14        NATHAN J. BUCHOK, ESQ.
          Spears Manning & Martini LLC
15        2425 Post Road
          Suite 203
16        Southport, CT 06890
          203-292-9766
17        Email: nbuchok@spearsmanning.com

18

19

20

21

22

23

24

25
```

```
1              THE COURT:  Good afternoon, Counsel.

2              ALL:  Good afternoon, Your Honor.

3              THE COURT:  This is D'Addario v. D'Addario,

4    16-CV-99.  May I have appearances, starting with Plaintiff?

5              MR. ARMSTRONG:  Yes, Your Honor.  My name is Dean

6    Armstrong.  I'm attorney for the Plaintiffs.  I'm the one

7    that sounds like he has a cold.  Co-counsel, Ed Taiman, is on

8    the line, too.

9              THE COURT:  And he does not have a cold?

10             MR. TAIMAN:  No, I don't.

11             THE COURT:  Okay.  And for the Defendants?

12             MR. MIODONKA:  Good afternoon, Your Honor.  This is

13   Tony Miodonka from Finn Dixon & Herling on behalf of

14   Defendants David D'Addario, Mary Lou D'Addario Kennedy;

15   Silver Knot, LLC; and Nicholas Vitti.

16             MR. BUCHOK:  And good afternoon, Your Honor.  This

17   is Nate Buchok on behalf of Mr. Gregory Garvey and Red Knot

18   Acquisitions, LLC

19             THE COURT:  All right.  Okay.  We are back and

20   running after the Second Circuit's decision reversing a fair

21   amount of what was dismissed and suggesting that the State

22   claim ought to, in fact, stay here.

23             I understand from the status report -- oh, by the

24   way, I just want to note:  Mr. Miodonka is pro bono counsel

25   to a committee of the Proprietors of the New Haven Green on
```

```
 1    which I serve.  I don't see any problems there, but I thought
 2    I would tell you.
 3              MR. ARMSTRONG:  Your Honor, this is Dean Armstrong.
 4    Thank you for bringing that to everybody's attention.  My
 5    goodness, your reputation is sterling.  There's no problem,
 6    Judge.
 7              MR. BUCHOK:  No problem on behalf of Mr. Garvey and
 8    others.
 9              THE COURT:  Well, so is his reputation.  So,
10    there.
11              MR. ARMSTRONG:  Well --
12              THE COURT:  So we have a Cert Petition that has been
13    filed, and we will let that percolate along.  We have a
14    motion for leave to file a Second Amended Complaint, which
15    was filed on January 9, which the Defendants represent
16    they're going to oppose.  So when will I get your opposition?
17              MR. MIODONKA:  Your Honor, this is Tony Miodonka.
18    Just before this call, we conferred with Plaintiffs' counsel
19    about a short extension of our deadline to respond to that
20    motion.  We intend to seek a two-week extension, through and
21    including February 6th, to file that opposition.  And, again,
22    that's with Plaintiffs' consent.
23              THE COURT:  Okay.
24              MR. ARMSTRONG:  That's correct, Your Honor.
25              THE COURT:  All Right.  And then we'll have 14 days
```

1    for reply from the Plaintiffs, if they choose to avail
2    themselves of that.
3              MR. ARMSTRONG:  Okay.  Very good, Your Honor.
4              THE COURT:  Okay.  So that takes care of that.
5              Now, the Defendants anticipate filing a request for
6    a prefiling conference but have represented to my judicial
7    assistant that they don't want that at this time.  I then go
8    on to read that this anticipated dispositive motion is
9    accompanied by a request for stay of discovery.
10             If we have finished the Motion to Dismiss stage, the
11   next stage, presumably, is summary judgment.  We can't do
12   that without discovery.  What is it that is contemplated as
13   dispositive motion practice?
14             MR. MIODONKA:  Your Honor, this is Tony Miodonka
15   again.  At this point, we do not -- what's unclear is what is
16   the operative pleading.  And we have a request by the
17   Plaintiffs to substantially amend the Complaint to, among
18   other things, add new claims, new counts, which would, of
19   course, allow the Defendants to file a renewed Motion to
20   Dismiss, potentially, if the Motion for Leave is granted.
21             We also think that the State law claims that remain
22   in the case are equally deficient to the Plaintiffs' claim
23   for lost debt damages, which was deemed to be unripe by both
24   Your Honor and the Second Circuit.  And, so, we anticipate,
25   in any event, moving to dismiss those State law claims, as

1    well.

2           But what ultimately the answer is, we're not sure

3    what claims will remain viable in this case.  We don't know

4    what claims may be allowed to be added in this proposed

5    Amended Complaint; and, so, it's somewhat difficult at this

6    juncture to identify the specific posture we may take in a

7    future Motion to Dismiss or a Motion for Judgment on the

8    Pleadings, or what-have-you.

9           But that is sort of a summary of some of our

10   anticipated dispositive motions; again, depending on the

11   operative pleading that we're dealing with at the end of the

12   day.

13           THE COURT:  Okay.  Mr. Armstrong, have you given any

14   thought to whether there are areas that you want to amend

15   about this -- about this Seconded Amended Complaint?  Let me

16   just first preface it by saying, the prefiling conference,

17   particularly with respect to a Motion to Dismiss, has as its

18   objective setting out what all the grounds are for claimed

19   deficiency in the pleadings, giving the Plaintiff an

20   opportunity to amend to try to meet those grounds, which will

21   do one of two things -- either negate the need for a Motion

22   to Dismiss or give the moving party -- the Defendant -- a

23   final Complaint on which to interpose its challenge to the

24   sufficiency or otherwise.

25           We sort of can't do that here.  We're in a backwards

1   situation.  So that's why I wondered if at the outset the

2   Plaintiffs had given any thought to any changes they would be

3   wanting to make in the Complaint?

4           MR. ARMSTRONG:  Your Honor, we put a lot of thought

5   into the Second Amended Complaint, and we do know this:  At

6   the end of the day, the Second Circuit has allowed the

7   1962(b) claims to go forward, and, from the injury

8   standpoint, allowed the collection expense damages, which

9   this Court also allowed, to go forward.  The Defendants have

10  not filed a petition for *certiorari* on those two grounds.

11          So at the end of the day, at a minimum, Judge, at a

12  bear minimum, the Second Amended Complaint is certainly

13  sufficient as to the 1962(b) claim, which the Second Circuit

14  approved, and also sufficient as to the injury, the

15  collection expense damages.

16          There are two grounds for filing a Petition for Writ

17  of *Certiorari*:  Number one, the direct injury requirement,

18  where they disagreed with this Court's ruling and also

19  disagreed with the Second Circuit ruling, that there was a

20  sufficient direct injury.  That is as to the -- as to what's

21  called the lost debt or the benefit of the inheritance claim.

22  Their argument does not even touch or affect the direct

23  injury claim.

24          And the second thing, Judge, is that it doesn't have

25  any impact.  Even if they went before the United States

1    Supreme Court and the Supreme Court grants cert, it doesn't

2    have any impact on Virginia's capacity to assert the claims

3    for and on behalf of the probate estate.  It doesn't have any

4    impact on the direct injury for the collection expense

5    damages, which this Court ruled was appropriate and the

6    Second Circuit ruled was appropriate.

7            Their second ground for Petition of *Certiorari* was

8    whether certain outside parties -- you know, it's

9    sufficiently alleged under the Reeve's Operational Management

10   test.  But, Judge, that has no impact on the 1962(b) claims,

11   and the Second Circuit specifically ruled that sufficient

12   allegations were made against David D'Addario as to the

13   operations or management test, which there's no dispute.

14           So, Judge, that's a long-winded way of saying that,

15   worst-case scenario, the 1962(b) claim, as approved by the

16   Second Circuit and as approved by this Court, on the injury

17   for the collection expense damages will proceed, which would

18   then automatically allow the 1962(d) conspiracy claims to

19   proceed.

20           Judge, you know, I've learned a lot from, you know,

21   very good judges like you and the Second Circuit and very

22   good lawyers on the other side.  I don't believe that the

23   Complaint, the Second Amended Complaint, Judge, is in any way

24   deficient.  I suppose I can always be taught new tricks.  I

25   don't mean "tricks," but new approaches.  But I don't believe

1  it's deficient, Judge.

2           THE COURT:  Well, what you're saying, though, based

3  on the law of the case as it stands right now, there's a lot

4  to be working with -- I'm moving ahead to address the request

5  for a stay of discovery, which seems ill-advised, given that

6  there is a core, a large core of this case, that's back in

7  operation.  So tell me --

8           MR. ARMSTRONG:  Also, if I could -- I don't mean to

9  interrupt.  But if I could, the Court spoke of the law of the

10  case.  On October 17, 2018, the Defendants filed a joint

11  motion to stay the mandate, pending resolution of a Petition

12  for *Certiorari*, where on page 8 they said that they would

13  suffer irreparable harm, because if a stay of the mandate was

14  not issued, quote, This case would proceed to discovery

15  during the pendency of the Defendants' Writ Of *Certiorari*,

16  which is on page 8 of their motion before the Second Circuit.

17  I'd like to take them at their word.

18           The Second Circuit denied their petition to stay the

19  mandate, which they said they'd suffer irreparable harm

20  because, absent a stay of the mandate, quote, This case would

21  proceed to discovery during the pendency of the Defendants'

22  Writ of Certiorari.

23           I don't believe they made a misrepresentation to the

24  Second Circuit, and I don't know if the Court's overruling of

25  that on October 31 would be law of the case or not, but I'd

1    like to take them at their word.  We'd like to submit, Judge,

2    interrogatories and requests for production of documents.

3    Virginia D'Addario was 38 when her dad died and the probate

4    estate was opened.  She was 68 when this case was filed, and

5    she's now 71.

6           As the pleadings indicate, we have been thwarted at

7    efforts of discovery at every turn.  So we'd like to proceed,

8    Judge.  As I said, the worst-case scenario, trust of this

9    case will proceed based on the law of the case doctrine, and

10   we'd like to proceed with that limited discovery, Judge.

11   And, you know, prudence would dictate you hold off on

12   depositions until you've completed the written discovery.  So

13   that's the path that, with the Court's permission, that's the

14   path that we'd like to proceed with.

15          And we've already done, Judge -- as the record will

16   reflect -- we've already done our Rule 26(f) report of the

17   parties' planning meeting, and that was at Docket Number 26

18   on May 18, 2016.  We've already done our proposed scheduling

19   order.  That was also May 18, 2016, Docket Number 26-1.

20          THE COURT:  I'm sorry, sir.  We cannot hear what you

21   said.  Docket number what?

22          MR. ARMSTRONG:  I'm sorry.  I apologize.  The cold

23   has kicked in.  Docket Number 26-1.  So we've shown, you

24   know -- in light of the allegations, you know, counsel for

25   the Defendants have been most professional, we've worked out

1    many of these issues.  And, as I said, I don't believe that

2    they made a misrepresentation to the Second Circuit when they

3    said that absent a stay of the mandate, quote, "Discovery

4    would proceed in the trial court."

5              THE COURT:  Okay.  So let me --

6              MR. MIODONKA:  Your Honor, if I could respond.

7              THE COURT:  Just two seconds.  Before I hear from

8    the Defendant, I really want to know whether there's been any

9    movement in the Probate Court.

10             MR. ARMSTRONG:  Your Honor, it's kind of interesting

11   that -- you may remember, Judge, Judge Young in the prior

12   Kadle RICO suit gave the Defendants nine months and then one

13   year to close probate, and that was, like, gosh, 2013.  No,

14   there's not been.  It hasn't been closed.  It's gone on

15   ridiculously long.

16             And I realize, Judge, this is just an allegation,

17   but under the unique way that Mr. D'Addario's estate planning

18   documents were prepared, if Virginia dies before the probate

19   estate is closed, her interest devolves to David D'Addario --

20             THE COURT:  I am aware of that.  That has been a

21   theme throughout here.  I'm just wondering if any of the

22   Probate Court statutory procedures or appointments has

23   changed the 30-year inaction on this case, such that --

24             MR. ARMSTRONG:  No, Judge.  There's still over 20

25   years of accounting.  So I think the last accounting that

1     they did was, I don't know, like 2013.  There's over twenty

2     years of accounting that the Probate Court judge has not yet

3     reviewed and approved.  So it is a long, long way away from

4     closing.

5           And, once again, Judge, you've been most patient

6     with me, but there's a case I've cited called Geremia --

7     G-E-R-E-M-I-A -- *Geremia v. Geremia* points out that Probate

8     Courts do not have the capacity to render monetary damages.

9     So matters such as what we allege here can be tried in the

10    Superior Courts in Connecticut outside of Probate.  And

11    obviously this Court would have supplemental jurisdiction of

12    those claims, as well.

13          And when you tie that up, Judge, at a minimum, the

14    law of the case is that numerous of the RICO pleadings are

15    allowed to go forward, at least on the Motion to Dismiss

16    stage -- I don't believe they get a third bite at the apple

17    at those -- and, so, we'd like the opportunity, Judge, to

18    engage in limited discovery.

19          I understand the Court's concerned about

20    proportionality.  And if the Defendants feel as though any

21    interrogatories or requests for production of documents is

22    inappropriately broad, I'm confident Your Honor's Magistrate

23    could adequately handle that.

24          THE COURT:  Well, let me just -- your 26(f) that was

25    filed back in 2016 isn't going to give me a very good

1    schedule to go by here.  Let me hear from the Defendant with

2    respect to staying discovery or not.

3            MR. MIODONKA:  Thank you, Your Honor.  Respectfully,

4    there -- this case has been whittled down quite a bit by the

5    Second Circuit's opinions.  The Second Circuit held that

6    plaintiff's lost debt damages, which are by far the vast bulk

7    of her damages, are not ripe in this case; and, so, what

8    we're essentially fighting about at this point -- again,

9    subject to potential amendment of the Complaint -- is what

10   Plaintiffs have alleged to be approximately two hundred

11   thousand dollars in legal fees.  And depending on how the

12   Complaint is amended -- ultimately, if it is amended -- there

13   may be additional arguments, not only with respect to the

14   state law claims and the ripeness of those claims, but also

15   with respect to the claims that do survive the appeal.

16           Plaintiff has -- and our review is ongoing, but

17   Plaintiff has made substantial changes to the Complaint,

18   including contradictory factual allegations from the original

19   Complaint, additional claims which need to be reviewed and

20   potentially subject to a Motion to Dismiss.

21           Your Honor, we would submit that it's premature to

22   begin discovery until we have an operative pleading upon

23   which to focus.  The parties obviously have very different

24   views on the appropriate scope of discovery in light of the

25   claims that have survived.  They will -- no doubt the scope

1    of discovery will be further impacted by, again, the

2    amendment or non-amendment of the Complaint and the form in

3    which that takes, as well as dispositive motions in-depth,

4    and potentially end up in new claims, the state law claims,

5    et cetera.

6            So we would submit, at a minimum, that the stay of

7    discovery should remain in place until such time as we have

8    an operative pleading and the Court resolves the Motion for

9    Leave to Amend, at which point I think the scope of discovery

10   will be much clearer, and potentially the parties could set a

11   date after that point where they could submit a

12   meet-and-confer and submit a new joint 26(f) report, which

13   would lay out, you know, a schedule going forward, including,

14   potentially, discovery, if it's appropriate at that time.

15           So we would, again, urge this Court to maintain the

16   stay of discovery, because discovery in this case could be

17   potentially quite broad, quite expensive, lead to substantial

18   motion practice.  And if what we're really fighting about is

19   a couple hundred thousand dollars attorney's fees claim, the

20   proportionality of that discovery will be very much in

21   dispute.

22           So, with that said, again, we would urge the Court

23   to maintain the stay of discovery until the case clears up a

24   little bit more.

25           MR. BUCHOK:  Thank you, Your Honor.  This is Nathan

1    Buchok on behalf of Mr. Garvey.  I agree with what
2    Mr. Miodonka said, and I think, as Mr. Miodonka said, it's
3    difficult at this time, until we know what the operative
4    pleading is, to really do much.
5         You know, obviously the Plaintiffs have a very
6    different view than the Defendants of what this case should
7    look like on the basis of the Second Circuit's remand, and
8    that's going to obviously have an impact on what the parties
9    view as an appropriate scope of discovery.
10        So until we have -- if we were to proceed with
11   discovery without having that resolved through the filing of
12   an operative pleading, you know, it's just going to lead to
13   discovery disputes as to what the appropriate scope of
14   discovery is and just incur costs that wouldn't
15   necessarily -- that may not be necessary once the Court has
16   resolved what the appropriate contours are of this case after
17   the remand.
18        THE COURT:  I'm looking at your 26(f) report from
19   two and a half years ago.  It doesn't tell me whether you all
20   have complied with your initial disclosure requirements.
21        MR. ARMSTRONG:  Your Honor, this is Dean Armstrong.
22   I requested that the Defendants comply with it, and they
23   respectfully declined.
24        THE COURT:  So what's wrong with at least getting
25   that far?  Mr. Miodonka?

1      MR. MIODONKA:  I'm sorry, Your Honor.  When you say

2  "getting that far," are you referring to initial disclosures?

3      THE COURT:  Yes.

4      MR. MIODONKA:  To be frank, I was not involved in

5  the case at the time, so I can't respond specifically to

6  Mr. Armstrong's representation that the Defendants declined

7  to provide initial disclosures.  Perhaps Mr. Buchok could

8  respond to that.  But, generally speaking, I -- again,

9  subject to our position and our argument that the stay should

10  be maintained until we have an operative pleading, if the

11  Court is inclined to make -- to extend the stay, I think the

12  Defendants, at least speaking for my clients, would be

13  willing to work on and make initial disclosures, subject to

14  the rules.

15      THE COURT:  Well, I think we should at least get

16  past the stage of initial disclosures that under normal

17  timing would have been made a long time ago.  So let's have

18  that, full compliance with that.

19      And then because there is at least some of the case

20  that will be going forward and would not be subject to the

21  Motion to Dismiss, I'm going to propose that the Plaintiff be

22  permitted to propound written discovery that is focused on

23  what is indisputably remaining in the case.  And if there is

24  objection to those interrogatories as not bearing potentially

25  on what remains in the case, then we can hear that.

1          But it seems to me that there's no need to delay

2     everything.  But obviously depositions should be stayed and

3     written discovery that goes to any of the new parts of the

4     Complaint can well be stayed for now, because we're going to

5     get a motion to dismiss some part of the new Complaint, and

6     opposition, in the relatively near future.  So it allows you

7     to get, at a minimum, the residual part of the case underway.

8     Okay?

9          MR. ARMSTRONG:  Very good.  Your Honor, this is Dean

10    Armstrong.  I know the Court has a reputation for being very

11    practical on matters.  In terms of the Motion for Leave to

12    Amend the fulmen factors, none of them militate against

13    amending.  I think the Defendants' only argument would be on

14    the futility aspect of it.  And if that's their only

15    argument, wouldn't that, Judge, be more appropriately handled

16    on a Motion to Dismiss, as opposed to Motion for Leave to

17    Amend?

18         MR. MIODONKA:  Your Honor, though I appreciate

19    Mr. Armstrong's speculation about the potential grounds for

20    our opposition to the Motion for Leave to Amend, I think it's

21    premature to characterize our arguments and make decisions

22    based on briefs that haven't been submitted yet.  So I would

23    suggest we hold off on that until the Defendants have had

24    time to fully analyze the changes to the Complaint and file

25    their opposition to the same.

1          MR. BUCHOK:  I agree, Your Honor.  There's multiple

2     grounds on why a Leave to Amend would not be appropriate and

3     would appreciate the opportunity to brief that.

4          THE COURT:  So I'd like to have a prefiling

5     conference on your Motion to Dismiss because when you've set

6     out in general terms what your grounds are, I'd like to give

7     the Plaintiff the opportunity to amend to address them -- if

8     the Plaintiffs wish to do so -- with the understanding that,

9     knowing what the grounds for dismissal will be and having had

10    the opportunity to amend to address them, there would not be

11    a further opportunity to amend after the motion has been

12    decided, unless there's just some unforeseen circumstances

13    that come up.

14         So I'd like to do that.  Or, to the extent you can

15    outline now what your general challenges will be to this

16    Amended Complaint, I'd like to make sure you get a finalized

17    Complaint to direct your Motion to Dismiss to.  But as I say,

18    we're sort of in an inverted position.

19         MR. MIODONKA:  Well, that's the difficulty, Your

20    Honor, is we don't know where the Motion for Leave to Amend

21    will come out.  We don't know if the Court will allow some

22    but not all of the amendments, none of the amendments, all of

23    them, whether the new claims that have been added will be

24    allowed.  So it's -- again, it's difficult for us to really

25    articulate, you know, some of the grounds for a potential

1    Motion to Dismiss.

2            I can tell you that the Defendants believe that the

3    state law claims are not ripe for the same reasons that the

4    Second Circuit found the 1962(c) claims were not ripe, as far

5    as they refer to the lost debt damages.  And, so, we will

6    certainly be moving on that basis.

7            But with respect to the Federal claims and the new

8    claims, we just aren't at the point yet where we can, you

9    know, articulate our arguments sufficiently for a pre-motion

10   or prefiling letter.

11           THE COURT:  All right.  I'm not quite sure I

12   understood what you meant by you can't know what will be

13   allowed and what won't be allowed.  Nobody will know until

14   we've had a chance to take a look at your motion and have

15   this all briefed up.

16           But I tell you what we'll do here --

17           MR. MIODONKA:  That's right, Your Honor.  I guess

18   that's my point, is that, you know, I think we can set a date

19   for a prefiling conference and briefing with respect to that,

20   you know, set off of the date on which the Court rules on the

21   Motion for Leave, so that we have it, and then at that point

22   we have an operative Complaint and we can move forward with

23   our prefiling exercise.  But at this point, I think we're

24   still -- it's still premature for us to be addressing those

25   issues.

1          THE COURT:  Okay.  The prefiling conference would

2     not result in any kind of ruling on what part of the

3     Complaint may be amended or not.  I think what I'm going to

4     do is waive the prefiling conference right for this case,

5     given its peculiar posture, and just let you file your Motion

6     to Dismiss.  What that means is that it does not carry with

7     it a scenario in which further amendments are barred because

8     they were already permitted beforehand, but it just holds any

9     additional amendments to the higher standards of amendments

10    being made later on in the case.

11          So just go ahead, get your opposition filed on

12    February 6th.  Any reply will be filed 14 days later.  And

13    we'll take it up, as we say, "in due course."  If it seems to

14    me that oral argument would benefit the Court's understanding

15    of the parties' positions, I'll set that, but not -- it will

16    not necessarily be put down for oral argument.

17          And then we will have only a limited stay of

18    discovery, and that is for matters that are encompassed with

19    the Amended Complaint -- the amendments to the Complaint and

20    depositions, but will permit limited discovery to go forward

21    in the form of initial disclosures and written discovery on

22    the existing case.

23          Okay.  Anything else that we should take up to get

24    this case back on track?

25          MR. ARMSTRONG:  One other thing, Your Honor.  Just

1    thank you very much for letting us handle it over the

2    telephone.  It reduces expenses and, also, I don't have the

3    chance to spread my cold to anyone else.

4              THE COURT:  Okay.  I hope you recover soon.

5              MR. BUCHOK:  I'm sorry, Your Honor.  Nathan Buchok.

6    Just to clarify.  When you say discovery on the existing

7    case, that would be the existing case as it stands

8    post-remand, with the remaining claims after the Second

9    Circuit's remand?

10             THE COURT:  Yes.  Okay?

11             MR. ARMSTRONG:  Very good.

12             THE COURT:  All right.

13             MR. BUCHOK:  Thank you, Your Honor.

14             MR. ARMSTRONG:  Thank you, Judge.

15             THE COURT:  Have a good day.  Goodbye.

16             (Teleconference concluded, 2:10 p.m.)

17

18

19             COURT REPORTER'S TRANSCRIPT CERTIFICATE

20    I hereby certify that the within and foregoing is a true and

21    correct transcript taken of the proceedings in the

22    above-entitled matter.

23

24                           /s/  Tracy L. Gow
                             Tracy L. Gow, RPR
25                           Official Court Reporter