UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIRGINIA A. D'ADDARIO, Individually, and on behalf of the F. Francis D'Addario Testamentary Trust and the Virginia A. D'Addario Trust; and VIRGINIA A. D'ADDARIO, EXECUTRIX, as Executrix of the Probate Estate of Ann T. D'Addario, Deceased, and on behalf of the F. Francis D'Addario Testamentary Trust and the Ann T. D'Addario Marital Trust,<br>　　Plaintiffs,<br>v.<br>DAVID D'ADDARIO; MARY LOU D'ADDARIO KENNEDY; GREGORY S. GARVEY; RED KNOT ACQUISITIONS, LLC; SILVER KNOT, LLC; and NICHOLAS VITTI,<br>　　Defendants. | Civil No. 3:16cv99 (JBA)<br><br>September 23, 2019 |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff Virginia D'Addario moves for leave to file a Second Amended Complaint. (Mot. for Leave to File Second Am. Compl. [Doc. # 55].) Defendants oppose that motion. (Defs.' Joint Opp. [Doc. # 62].) For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

**I. Background**

The Court assumes the parties' familiarity with the facts alleged in this case, set out in detail in *D'Addario v. D'Addario*, 901 F.3d 80, 86-91 (2d Cir. 2018). In January 2016, Virginia D'Addario filed this action against Defendants. (Compl. [Doc. # 1].) In May 2016, she filed the First Amended Complaint ("FAC"), asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Connecticut state law. In keeping with the Court's

procedures, Defendants moved for a pre-filing conference, setting out in detail the grounds for a forthcoming motion to dismiss the FAC. (Mot. for Pre-Filing Conf. [Doc. # 27].) Plaintiff did not seek leave to further amend her complaint to cure the asserted deficiencies, and Defendants moved to dismiss the FAC. (Mot. to Dismiss First Am. Compl. [Doc. # 37].) The Court granted that motion to dismiss, holding that Plaintiff had failed to plead a viable RICO claim and declining to exercise supplemental jurisdiction over her remaining state law claims. (Ruling Granting Mot. to Dismiss [Doc. # 49].) Plaintiff appealed that ruling.

The Second Circuit Court of Appeals upheld the dismissal of certain of Plaintiff's claims but reinstated others. Specifically, the Court of Appeals concluded that Plaintiff "has sufficiently identified a distinct acquisition and maintenance injury under section 1962(b) [of RICO] to support her collection expenses claim with regard to [Defendants] David [D'Addario], Gregory Garvey, and Red Knot, but not with regard to the other defendants." *D'Addario*, 901 F.3d at 92-93. It also determined that "Virginia has also sufficiently alleged a section 1962(c) 'enterprise' with regard to all six defendants, supporting her claim for collection expenses on this theory of recovery as well." *Id.* at 93. Thus the Court of Appeals vacated the "dismissal as to Virginia's RICO claim on her own behalf and on behalf of her mother's estate for collection expenses and remand[ed] that claim and her state law claims for further proceedings." *Id.*

Virginia[1] now moves for leave to file her Proposed Second Amended Complaint ("PSAC") "to (a) conform to the Second Circuit decision; (b) add additional facts and claims as to the relevant enterprises for Plaintiffs' RICO claims; (c) add two additional causes of action against Defendant David D'Addario related to the claims asserted in the prior Complaint; and

---

[1] In this ruling the Court will refer to members of the D'Addario family by first name to limit confusion.

(d) clarify that Plaintiff Virginia A. D'Addario is also asserting claims for and on behalf of the Probate Estate of F. Francis D'Addario, Deceased." (Mem. Supp. Mot. for Leave to File [Doc. # 55-2] at 1.)

## II. Discussion

A party may amend its pleading more than once only with "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* But leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). Leave may be denied where plaintiffs were "given ample prior opportunity to allege a claim" but did not do so previously. *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996).

Plaintiff argues that leave to file the PSAC should be given because "[t]here is no undue delay[,] . . . no bad faith or dilatory motive[,] . . . no prior failure by Plaintiffs to cure pleading deficiencies, and no undue prejudice would result to the Defendants." (Mem. Supp. Mot. for Leave to File at 2.) She also contends that "it would not be 'futile' to allow Plaintiffs to assert the additional claims set forth" because the "additional 'enterprises' for Plaintiffs' RICO claims are in accordance with the Second Circuit's decision"; because "Plaintiffs have asserted additional viable causes of action against David D'Addario for conversion (Count Six) and for statutory theft [(Count Seven)]" "based on the detailed factual allegations in the proposed Second Amended Complaint"; and because "the proposed Second Amended Complaint clarifies that Plaintiff Virginia A. D'Addario is also asserting claims against the Defendants for and on behalf of her deceased father's probate Estate as allowed under Connecticut law." (*Id.* at 2-3.)

3

Defendants respond that "the Plaintiffs now attempt to begin the entire process again, alleging new legal theories, new causes of action, and newly expanded damages claims, all based on the same alleged conduct that occurred years before the filing of the first Complaint in this matter" despite "multiple prior opportunities to amend . . . after full notice of all the deficiencies [of the FAC] the Defendants ultimately raised in their motion to dismiss." (Defs.' Joint Opp. at 1-2, 13-14.) Defendants explain that "[a]ll of the alleged facts upon which the Plaintiffs rely in crafting their new theories of liability and causes of action were in existence for many years before this Court provided the Plaintiffs with their 'final' opportunity to amend the Complaint" following Defendants' Motion for Pre-Filing Conference which explained the bases for a forthcoming motion to dismiss. (*Id.* at 16.) Moreover, "Plaintiffs have offered no justification for why they failed to include these causes of action[] and legal theories at that time, or why after failing to do so, they should be allowed to assert new theories now, years later, after a lengthy appeal process." (*Id.*)

Defendants also contend that "[a]ll of the factors supporting denial of leave to amend are present here and mandate denial of" Plaintiff's motion, including that Defendants would suffer prejudice if they are "now required to begin the process anew and litigate the new claims" after "already dedicat[ing] significant resources to litigating the claims in the FAC" and that "any further amendment would be futile." (*Id.*) Defendants argue that they would "be significantly prejudiced if they are forced to continue to incur litigation costs endlessly defending against the Plaintiffs' repeated attempts to fashion various causes of action and damages theories from the same alleged facts." (*Id.* at 19.)

Because the PSAC represents Plaintiff's opportunity to accord with the Second Circuit's opinion and because Defendants acknowledge that "[a]lthough the Plaintiffs have substantially

4

revised their legal theories and claims [in the PSAC], the alleged conduct underlying these claims remains essentially the same," (Defs.' Joint Opp. at 8), the Court will not address individual embellishments and changes made in the PSAC but rather will focus on the claims and damages alleged in the PSAC.

### A. Assertion of Claims on behalf of Estate of F. Francis D'Addario

"Plaintiff Virginia D'Addario now seeks to assert *all* of the claims in this action on behalf of the Estate" of her father, F. Francis D'Addario, in addition to the capacities in which she first filed this action. (Defs.' Joint Opp. at 20 (citing PSAC ¶ 7.3); *see* PSAC ¶ 3.) The FAC did not include any claims pleaded by Virginia on behalf of her father's estate. By pleading in this capacity, Virginia endeavors to recover "damages proximately caused to the Estate and to Plaintiffs by Defendants' wrongful conduct," including the "misappropriat[ion of] Estate assets . . . in excess of $588,000,000" and "over $1,000,000 in unnecessary legal fees" incurred by the Estate. (PSAC ¶ 138.)

"Notwithstanding the lack of any changed circumstances or newly acquired facts," Defendants argue, "Virginia D'Addario has now donned yet another 'hat' and now purports to bring this action on behalf of her deceased father's 'probate estate' as 'a legatee under her father's Will; and heir of her deceased father; a beneficiary of her father's probate estate; and Executrix of her mother's probate estate,' in addition to the various capacities through which she brought the" FAC. (*Id.* at 9.) Defendants contend that Virginia's attempt to proceed on behalf of her father's estate is futile because "[u]nder Connecticut law, Plaintiffs—who are not executors or administrators of the Estate [of F. Francis D'Addario]—lack standing to assert any such claims on behalf of the Estate," and because any claims on behalf of the Estate are "not ripe" and "are also barred by the applicable statute of limitations." (*Id.* at 19.)

5

"Actions designed to recover personalty belonging to the estate or for its use, conversion, or injury are brought by the fiduciary rather than by the beneficiaries." *Geremia v. Geremia*, 159 Conn. App. 751, 781-82 (2015). However, "an exception exists" to that general rule. *Id.* "Where the executor or administrator has been guilty of fraud or collusion with the party to be sued, or where the interests of the personal representative are antagonistic to those of the heirs or distributees, the heirs or distributees may maintain actions relating to the personalty of the estate in their own names." *Id.* at 784.[2] "Similarly, when the legal representative has failed or refused to act, the heir may maintain an action to recover assets for the benefit of the estate." *Id.*

Thus Virginia perhaps could have brought some or all claims in this action on behalf of her father's estate, had she chosen to do so when filing the original complaint or the FAC. But she offers no explanation as to why she chose not to do so, nor any convincing argument as to why she should be permitted to do so now, several years after this litigation began and following thorough litigation of the adequacy of the claims in the FAC. Virginia argues that "forcing [her] to file a new action against the Defendants asserting claims for and on behalf of her father's Probate Estate . . . would result in unnecessary duplicative proceedings and disserve judicial economy." (Reply Supp. Mot. for Leave to File [Doc. # 67] at 6-7.) Though it might have been more efficient had Virginia asserted claims in this new capacity earlier in this case, the Court disagrees that it would serve judicial economy to incorporate entirely new legal theories, pleading capacities, and damages requests at this stage of the litigation. In the absence of any explanation of the delay in pleading in this capacity despite prior opportunity to do so, and of any argument

---

[2] The Court notes that the Connecticut case cited by Virginia in support of her argument that she may sue on behalf of her father's estate was decided the year before this case was filed, indicating that she could have known of her opportunity to proceed in that capacity when filing the original complaint or FAC.

6

in support of her conclusory assertion that "Defendants would not suffer undue prejudice by the filing of the PSAC," (Reply at 7), Plaintiff may not now amend the complaint to assert claims on behalf of her father's estate.[3]

**B. RICO Claims**

    **i. Lost-Debt Damages**

Defendants argue that by the terms of the Second Circuit's remand to this Court, the "Plaintiffs' claims for lost-debt damages are not ripe and the District Court's holding dismissing those claims with prejudice remains binding." (Defs.' Joint Opp. at 10.) Therefore, Defendants argue, Plaintiff should not be allowed to "reallege[] claims for lost-debt damages [in the PSAC], despite" the Second Circuit's holding. (*Id.* at 12.)

The Second Circuit made clear that "Virginia's RICO claim for 'lost debt' damages based on the amount of her expected in heritance (and that of her mother's estate) is unripe." *D'Addario*, 901 F.3d at 95. Thus to the extent that Plaintiff attempts to reassert in the PSAC lost debt damages caused by the alleged RICO violations, (*see PSAC* ¶¶ 116.1-116.4, 137-139), her motion is denied.

---

[3] This case was originally filed in January 2016, nearly four years ago. Since then, Plaintiff amended her complaint once and declined another opportunity to do so. And during that time, the bulk of the litigation before this Court and the Court of Appeals has focused on the adequacy of the claims alleged in the FAC. Defendants argue that to allow Plaintiff's requested amendments now "would encourage piecemeal and prolonged litigation, allowing the Plaintiff[] to try out one theory of liability, pursue it through the District Court and Court of Appeals, only to try out another theory when the first one is ultimately unsuccessful." (Defs.' Joint Opp. at 16.) Defendants also argue that they "would be significantly prejudiced if they are forced to continue to incur litigation costs endlessly defending against the Plaintiff['s] repeated attempts to fashion various causes of action and damages theories from the same alleged facts." (Id. at 18.)

7

### ii. Section 1962(b) Claims

To state a claim under § 1962(b), a plaintiff "must [] allege distinct damages arising from the acquisition or maintenance of control of the enterprise" which "must be different from the damages that flow from the predicate acts themselves." *D'Addario*, 901 F.3d at 98. The Second Circuit concluded that "Virginia has pleaded a viable claim under section 1962(b) against Red Knot and Garvey, as well as against David." *Id.* at 99. But as to "[t]he remaining defendants," who were "not themselves alleged to have exerted any direct control over the Estate's management, much less control that was acquired or maintained through any alleged racketeering acts," the FAC did not "sufficiently [] allege that Mary Lou, Silver Knot, or Vitti violated section 1962(b)." *Id.*

Count One of the PSAC asserts "violations by Defendants David D'Addario, Garvey and Red Knot of §[] 1962(b) of RICO." (SAC ¶ 112.) But elsewhere the PSAC asserts that "[p]ursuant to 18 U.S.C. § 1962(b), Defendants David D'Addario, Garvey, Red Knot *and Vitti* engaged in the pattern of racketeering activity described herein to allow David D'Addario to maintain control over the affairs of the Estate." (*Id.* ¶ 115.1 (emphasis added).) Plaintiff may not assert claims for violation of § 1962(b) against Defendant Vitti, which would be contrary to the Second Circuit's clear holding on this question. To the extent that the purported inclusion of Vitti in Plaintiff's § 1962(b) claim might rest on newly pleaded facts or allegations, the Court will not permit such amendments.[4]

---

[4] The Second Circuit explained that

> Virginia alleges generally that Mary Lou, Silver Knot, and Vitti took part in (or, in Vitti's case, advised David regarding) one or more of the various schemes by which David looted the Estate. Without more, however, participation as a third party in a business transaction with the Estate does not constitute either

8

### iii. Section 1962(c) Claims

In the FAC and before the Second Circuit, "Virginia identifie[d] two possible 'enterprises' with which all Defendants purportedly associated: (1) an 'association-in-fact' consisting of all six Defendants, and (2) the Estate itself." *D'Addario*, 901 F.3d at 100. The Court of Appeals rejected both enterprises, concluding that the FAC's "allegations do not plausibly make out the association-in-fact enterprise proposed by Virginia, in which the six Defendants together were 'devoted to . . . allowing David . . . to acquire an interest in, and then maintain control over, the affairs of the Estate' . . . under her section 1962(c) theory of recovery" and that "an estate is not a legal entity." *Id.* at 102 (internal quotation omitted). The Court of Appeals "d[id] not opine [] on the question whether Virginia could plausibly allege a series of more limited associations-in-fact, consisting of the participants in particular schemes pursuing more limited purposes than David D'Addario's wholesale looting of the Estate" and "decline[d] to construct associations-in-fact that Virginia has not identified." *Id.* at 100 n.9. The Second Circuit then concluded that although the Estate itself was not an enterprise for purposes of Virginia's § 1962(c) claim, "the individuals who were formally associated with the (inchoate) Estate—that is, David and Larry, the Executors—indisputably comprise an 'association-in-fact.'" *Id.* at 103.

---

maintenance of an "interest in" or exercise of "control over" the Estate for puposes of section 1962(b). Accordingly, Virginia failed sufficiently to allege that Mary Lou, Silver Knot, or Vitti violated section 1962(b).

*D'Addario*, 901 F.3d at 99. The Court recognizes that this language suggests that there could be facts which, if properly pleaded, might support a § 1962(b) claim against Vitti or the other defendants. But in the absence of any identification of such facts in Plaintiff's briefing or any explanation as to why such facts, if any, were not previously pleaded, no § 1962(b) claim may be asserted against Vitti.

9

But the PSAC asserts two enterprises for purposes of 1962(c): "Defendants David D'Addario, Garvey, Red Knot and Vitti . . . in an associational enterprise-in-fact" and "David D'Addario and Larry D'Addario, as Executors of the Estate . . . [in] an associational enterprise-in-fact." (SAC ¶¶ 115.2, 115.4.) The association of David and Larry D'Addario conforms to the Second Circuit's holding, but the association of David, Garvey, Red Knot, and Vitti represents a new legal theory not previously advanced before this Court or the Court of Appeals.

Defendants take issue with this attempt to "add[] a newly-conceived association-in-fact enterprise for purposes of [Plaintiff's] § 1962(c) claim," which Defendants argue is contrary to the Second Circuit's conclusion "that the only viably-pled association-in-fact enterprise was an association of Larry and David D'Addario." (Defs.' Joint Opp. at 9, 12.) Plaintiff disputes that the Second Circuit's opinion limited the scope of possible associations-in-fact to only the Larry and David association, arguing that that opinion also allowed for a "more limited David D'Addario Control Enterprise." (Reply at 4.) Plaintiff argues that the association-in-fact alleged in the PSAC—consisting of David D'Addario, Garvey, Red Knot, and Vitti, (SAC ¶ 115.2)—is thus within the scope of the Second Circuit's ruling. (Reply at 4.)

Plaintiff is correct that "the Second Circuit did not undertake, either through its Opinion or by its Mandate, to preclude the Plaintiffs from asserting additional claims upon remand." (Reply at 3.) Thus Plaintiff has demonstrated that this Court *could* permit the assertion of a new association-in-fact in the PSAC, but she makes no argument as to why this Court *should* do so in the face of substantial delay and Defendants' claims of prejudice. (*See supra* note 3 (discussing delays and Defendants' prejudice arguments).)

Following years of litigation and multiple opportunities to amend the complaint, Plaintiff seeks now to assert a new association-in-fact which rests upon facts and law which have been

known to the Plaintiff since the inception of this case. Plaintiff concedes that she "could have asserted the additional claims that [she] now seek[s] to assert in the [proposed PSAC] in the[] prior Complaint," but argues that "any such factor does not preclude [her] right to amend the[] Complaint" now. (Reply at 6.) Plaintiff asserts conclusorily that "there was no undue delay . . . in seeking amendment, and there were no prior failures by Plaintiffs to correct any alleged pleading deficiencies." (*Id.*) But she offers no support or explanation for that position. (*See id.*) And Plaintiff does not attempt to explain why, despite her "ample prior opportunity to allege" the David, Garvey, Red Knot, and Vitti association, she did not do so before but should nonetheless be permitted to do so now. *See DeJesus*, 87 F.3d at 72. Plaintiff's motion is therefore denied as to this newly alleged association-in-fact, and the claims under § 1962(c) are limited to the Larry and David association-in-fact set out by the Second Circuit.

Defendants also dispute Plaintiff's attempt to "reverse[] course and, based on the same alleged facts, now claim that Larry D'Addario 'engaged in fraud, collusion, and bad faith' despite specifically alleging that he had not engaged in 'fraud or willful misconduct' in the FAC." (Defs.' Joint Opp. at 9.) "Now that the Second Circuit has found an association-in-fact consisting of Larry and David for purposes of the § 1962 claims," Defendants explain, "Plaintiffs want to paint a very different picture" of Larry's behavior than was portrayed in the FAC. (*Id.* at 25.) Defendants argue that "Plaintiffs should be precluded from asserting factual allegations that are flatly inconsistent with facts previously alleged merely to avoid the dismissal of their claims." (*Id.* at 14.) Defendants describe these factual changes as "transparently tactical and egregiously contradictory" in an attempt to "'plead around' the common purpose requirement for an association-in-fact by inserting into the Proposed PSAC allegations . . . that are impossible to square with the corresponding allegations in the FAC." (*Id.* at 27.) Therefore, Defendants argue,

11

the "Court should reject these proposed amendments because they have been submitted in bad faith for an improper purpose." (*Id.*)

Plaintiff disputes this characterization of the facts alleged in the PSAC, describing the "modifications to the allegations pertaining to Larry D'Addario's role as an Executor of the Estate" as "a matter of degree, not bad faith inconsistency." (Reply at 8.) Plaintiff cites allegations in the FAC regarding improper conduct by Larry, including participation in the Honeyspot Road Scheme, the "wrongful use and transfer of the Estate's residential properties," and "wast[ing] the estate in [his and David's] charge." (Reply at 9 (citing FAC ¶¶ 28-39, 72-73, 106).) Plaintiff also explains that the deletion of certain "exculpatory" claims regarding Larry contained within the FAC occurred because those allegations were "contained in the section of the FAC" pertaining to allegations which have been dismissed from this litigation. (*Id.*)

The Court agrees with Plaintiff that the changes to factual allegations made in the PSAC are not evidence of bad faith, nor are they so different from the allegations of the FAC that the proposed modifications should not be permitted. Even Defendants acknowledge that "[a]lthough the Plaintiffs have substantially revised their legal theories and claims [in the PSAC], the alleged conduct underlying these claims remains essentially the same." (Defs.' Joint Opp. at 8.) Thus Plaintiff's motion is granted as to the changes to factual allegations made in the PSAC.

  iv. **Section 1962(d) Claims**

The Second Circuit's "legal conclusions as to the adequacy of the Complaint's pleadings of the theories under sections 1962(b) and (c) reanimate Virginia's RICO conspiracy theory under section 1962(d), as well." *D'Addario*, 901 F.3d at 104 ("[A]t this early pleading stage," Virginia's allegations also "suffice to support her claim that each defendant participated in the

operation or management of the Estate as enterprise, in violation of 1962(c)."). Thus Plaintiff's motion is granted as to the claims under § 1962(d).

## C. State Law Claims

### i. Newly Asserted State Law Claims (Counts Six and Seven)

The PSAC includes two new state law claims against David D'Addario for conversion (Count Six) and statutory theft (Count Seven). To the extent these claims are brought by Virginia on behalf of her father's estate, Plaintiff's motion to amend is denied. (*See supra* at Section II.A.)

Counts Six and Seven of the PSAC are based on facts which were alleged in the FAC, and Plaintiff knew or should have known of the opportunity to bring claims for conversion and statutory theft when the original complaint and FAC were filed. As already discussed, litigation over the adequacy of the FAC has been ongoing for several years, and Plaintiff has had multiple opportunities to amend her complaint.[5] In the absence of any explanation as to why these counts were not asserted at those earlier opportunities or why the Court should allow the requested amendment at this stage, the Court will not allow Plaintiff the opportunity to add new state law claims now. Plaintiff's motion is therefore denied as to Counts Six and Seven.

### ii. Previously Asserted State Law Claims

"Because Virginia pleaded a cognizable federal RICO claim," the Second Circuit directed this Court to "revisit the question whether to exercise supplemental jurisdiction over Virginia's state law claims." *D'Addario*, 901 F.3d at 105. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other

---

[5] The original Complaint was filed in January 2016. The First Amended Complaint was filed in May 2016. After a pre-filing conference in June 2016 at which the parties discussed the basis of the Defendants' forthcoming motion to dismiss, Plaintiff had the opportunity to further amend her complaint to address the asserted deficiencies of the FAC but chose not to do so.

13

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This Court has original jurisdiction because Plaintiff has pleaded cognizable RICO claims.

Defendants make no argument against the exercise of supplemental jurisdiction over the state law claims which were included in the FAC, (*see generally* Defs.' Joint Opp.), and none of the reasons for which a district court "may decline to exercise supplemental jurisdiction over a claim" are present here.[6] *See* 28 U.S.C. § 1367(c). The interests of judicial economy, convenience, fairness and comity will be served by exercising jurisdiction over Plaintiff's valid state law claims. Thus the Court will exercise supplemental jurisdiction over Counts Two, Three, Four, Five, and Eight of the PSAC.

---

[6] A district court may decline to exercise supplemental jurisdiction if

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

## III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to File Second Amended Complaint [Doc. # 55] is GRANTED in part and DENIED in part. Plaintiff shall file a substituted Second Amended Complaint effectuating these rulings. Discovery shall begin forthwith. A supplemental Rule 26(f) Report shall be submitted within seven (7) days of the date of this ruling to enable the Court to issue a final scheduling order and set a trial date for this case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of September 2019.