UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIRGINIA A. D'ADDARIO, Individually, and on behalf of the F. Francis D'Addario Testamentary Trust and the Virginia A. D'Addario Trust; and VIRGINIA A. D'ADDARIO, EXECUTRIX, as Executrix of the Probate Estate of Ann T. D'Addario, Deceased, and on behalf of the F. Francis D'Addario Testamentary Trust and the Ann T. D'Addario Marital Trust,<br>    *Plaintiffs*,<br>    *v.*<br>DAVID D'ADDARIO; MARY LOU D'ADDARIO KENNEDY; GREGORY S. GARVEY; RED KNOT ACQUISITIONS, LLC; SILVER KNOT, LLC; and NICHOLAS VITTI,<br>    *Defendants*. | Civil No. 3:16cv99 (JBA)<br><br>April 3, 2020 |

**RULING ON PLAINTIFF'S MOTION TO STAY OR DECLINE SUPPLEMENTAL JURISDICTION**

Plaintiff moves the Court to "stay consideration of the supplemental jurisdiction Connecticut state law claims raised in this case, or decline supplemental jurisdiction over Plaintiffs' Connecticut state law claims, pending resolution of those Connecticut state law claims, and the additional state law claims, in the existing Connecticut state court suit." (Pl.'s Mot. to Stay or Decline [Doc. # 74] at 1.) Defendants oppose. (Defs.' Opp. [Doc. # 81].) For the reasons that follow, Plaintiff's motion is granted.

**I. Background**

The Court assumes the parties' familiarity with the facts alleged in this case, set out in detail in *D'Addario v. D'Addario*, 901 F.3d 80, 86-91 (2d Cir. 2018). This action began in January 2016. (Compl. [Doc. # 1].) In May 2016, Plaintiff filed the First Amended Complaint ("FAC"), asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Connecticut state law. (First Am. Compl. [Doc. # 25].) In March 2017, the Court granted Defendants' Motion to Dismiss that Amended Complaint, holding that Plaintiff had failed to plead a viable RICO claim and declining to exercise supplemental jurisdiction over

1

her remaining state law claims. (Ruling Granting Mot. to Dismiss [Doc. # 49].) Plaintiff appealed that ruling. In May 2017, Plaintiff also filed suit in Connecticut Superior Court, bringing the state law claims over which this Court had declined to exercise supplemental jurisdiction, and one additional state law claim for statutory theft. *See Virginia D'Addario, Executrix, et al. v. David F. D'Addario, et al.*, No. FST-CV17-6032325-S, Conn. Super. Ct., Jud. Dist. of Fairfield at Stamford (the "State Action"). The State Action was stayed pending resolution of Plaintiff's appeal in this matter. That stay expired in March 2019, but the state court has since ruled that it would not hold "a further Status Conference on entering a Scheduling Order" until this Court determines whether to exercise supplemental jurisdiction. (Pls.' Mem. [Doc. # 74-1] at 2, 6.)

The Second Circuit Court of Appeals upheld the dismissal of certain of Plaintiff's claims but reinstated others, vacating the "dismissal as to Virginia's RICO claim on her own behalf and on behalf of her mother's estate for collection expenses and remand[ed] that claim and her state law claims for further proceedings." *D'Addario*, 901 F.3d at 93. The Second Circuit also directed this Court to "revisit the question whether to exercise supplemental jurisdiction over Virginia's state law claims." *Id.* at 105.

On remand, Plaintiff moved for leave to file a Second Amended Complaint which, among other changes, "add[ed] two additional [state law] causes of action[1] against Defendant David D'Addario related to the claims asserted in the prior Complaint." (Pl.'s Mem. Supp. Mot. for Leave to File [Doc. # 55-2] at 1.) The Court granted Plaintiff's motion in part, but denied the motion as to the addition of new state law counts. Those counts were "based on facts which were alleged in the FAC, and Plaintiff knew or should have known of the opportunity to bring claims for conversion and statutory theft when the original complaint and FAC were filed." (Ruling on Leave to File Second Am. Compl. [Doc. # 69] at 13.) Thus,

---

[1] These newly proposed state law claims included the claim for statutory theft brought in the State Action.

"[i]n the absence of any explanation as to why those counts were not asserted at [] earlier opportunities or why the Court should allow the requested amendment at this stage," Plaintiff's request to include new state law claims was denied. (*Id.*)

The Court also decided to exercise supplemental jurisdiction over the remaining state law claims—which Plaintiff had already asserted in the First Amended Complaint—in the "interest[] of judicial economy, convenience, fairness and comity" and in the absence of opposition by Defendants. (*Id.* at 14.) Plaintiff subsequently filed the Second Amended Complaint, which includes those previously asserted state law claims.

## II. Discussion

Plaintiff now asks the Court to either stay consideration of all state law claims or to decline to exercise supplemental jurisdiction over those claims "pending resolution of those Connecticut state law claims, and the additional state law claims, in the existing Connecticut state court suit." (Pls.' Mem. at 1.) Plaintiff argues that this admittedly "unusual" request is warranted "so as to avoid piecemeal litigation, promote judicial efficiency, and streamline this case." (*Id.* at 2-3.) If Plaintiff's motion is not granted, she argues, it will "result[] in the prospect for piecemeal litigation of the Connecticut state law claims: the existing five Connecticut state law claims in this RICO suit, and the additional state law claim for statutory theft as asserted in the pending State Court Suit." (*Id.* at 2.) Instead, Plaintiff suggests that this Court should hear only the federal claims, leaving all of the state law claims to be brought together in the State Action.

"Depending on a host of factors," a district court "may decline to exercise jurisdiction over supplemental state law claims." *City of Chicago v. Am. Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). District Courts also "may be obligated not to decide state

law claims (or to stay their adjudication) where one of the abstention doctrines articulated by [the Supreme] Court applies," including "where denying a federal forum would clearly serve an important countervailing interest, for example . . . regard for federal-state relations, or wise judicial administration." *Id.* at 174 (internal quotations omitted).

Plaintiff argues that judicial economy, convenience, fairness, and comity would all be better served by permitting all state law claims to be heard together in the State Action.[2] First, Plaintiff argues that her proposal would better serve judicial economy and convenience because it would be most efficient to permit all state claims to be heard together, which can only happen by allowing them all to proceed in the State Action. (*See* Pls.' Mem. at 9.) Plaintiff asserts that "the D'Addario Defendants have not produced a single document . . . in response to Plaintiffs' January 18, 2019 requests for production of documents," arguing that because little progress has been made in litigating the state law claims in this federal action, no inefficiency would result from allowing those claims to proceed in state court instead. (*Id.* at 10.)

Defendants respond that Plaintiff's proposed "two-tracked litigation" is "wasteful" and inefficient, especially because those "federal and state claims all arise out of the same core allegations." (Def.'s Opp. at 13, 19.) Defendants also assert that if this Court continues to exercise supplemental jurisdiction over the existing state law claims, and if Plaintiff seeks to litigate the other state law claim in the State Action, then "Defendants intend to request a

---

[2] Separately, Plaintiffs argue that resolution of their state law claims turns on an unresolved question of Connecticut state law, and thus that federal jurisdiction over those claims would be improper. According to Plaintiffs, Defendants' anticipated challenge to the ripeness of Plaintiffs' state law claims is a question of state law whose "contours . . . ha[ve] not yet been fleshed out by the Connecticut courts" and thus "should be left for resolution by the Connecticut state courts." (Pls.' Mem. at 8.) Defendants dispute this point, arguing that "whether Plaintiffs' state law claims are ripe is a matter of federal law rooted in Article III of the Constitution," not in state law. (Defs.' Opp. [Doc. # 81] at 18.) Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims on other grounds, it need not resolve this dispute.

dismissal or further stay of the State Court case pending a full determination of the federal and state claims" pending in this federal action. (*Id.* at 20.) Thus, Defendants argue, "the risk of piecemeal litigation is minimized, not increased, by the Court's continued exercise of supplemental jurisdiction." (*Id.*)

But the crux of Defendants' position—that there will be less piecemeal litigation if this Court continues to exercise supplemental jurisdiction—turns on their bare assertion that they will "request a dismissal or further stay of the State Court case" if this Court continues to exercise supplemental jurisdiction, which *might*, *if* successful, prevent dual proceedings. But without more, the Court remains convinced that there will likely be two simultaneous proceedings—one state and one federal—regardless of the outcome of this motion. Thus, the question is whether judicial economy and convenience would be better served by grouping all claims but one in this federal action, leaving a single state law claim for statutory theft in the State Action, or by grouping all federal claims in this federal action and leaving all state law claims to the State Action.

In support of their argument that retaining supplemental jurisdiction over the state claims would maximize judicial economy, Defendants rely heavily on *Grenier v. Stamford Hosp. Health Sys., Inc.*, 2017 WL 2259765 (D. Conn. May 23, 2017). In *Grenier*, the court rejected the plaintiff's argument against continuing supplemental jurisdiction "to the extent Plaintiff's actions are an attempt to re-try his case through forum shopping." *Id.* at *4. The "litigation ha[d] been ongoing for two years and nearly eleven months," discovery had closed "nearly six months ago," and "trial [was] imminent." *Id.* Plaintiff "moved to amend the complaint to withdraw his" federal claim, and then sought remand to state court "after summary judgment briefing ha[d] been filed and with jury selection scheduled," arguing that the court no longer had subject-matter jurisdiction over the remaining state law claims. *Id.* at *2, *4. The court in *Grenier* concluded that the "timing of" the plaintiff's "actions suggest[ed] an attempt at forum shopping," in light of the fact that he dropped his federal

5

claim "five days before the deadline for Defendants to move for summary judgment . . . for failure to disclose any expert witnesses," which failure "appear[ed] from [the defendants'] pleadings to be fatal." *Id.* at *4. Defendants argue that "Plaintiff's tactics in this case are similar to those rejected" in *Grenier*." (Defs.' Opp. at 17.)

But as even Defendants' description of the case makes clear, the procedural posture in *Grenier* differs significantly from our case. (*See id.* at 16-17.) Although this case has been pending for several years, the parties have not "engag[ed] in extensive discovery," nor have they reached the summary judgment phase of this litigation or "position[ed] the case for trial." Moreover, the *Grenier* plaintiff appeared to have intentionally divested the court of federal question jurisdiction in order to later argue against the exercise of supplemental jurisdiction. *See Grenier*, 2017 WL 2259765 at *2, *4. In contrast, Plaintiff here did seek, albeit belatedly, to bring all of her claims together in the federal action and only moved this Court to decline to exercise supplemental jurisdiction once the Court's ruling made it clear that she could not do so. Additionally, although certain aspects of this case have already been extensively litigated, the focus has been largely on the ripeness and adequacy of Plaintiff's federal RICO claims. *See D'Addario*, 901 F.3d at 85-86. Thus, to the extent that significant effort has already been expended in this case, it is not effort which would need to be duplicated or repeated in the State Action if the state law claims proceeded separately there instead.

Additionally, Plaintiff's federal claims (for RICO violation) and state claims (for breach of fiduciary duties and unjust enrichment) are legally and conceptually quite distinct. Although the two sets of claims arise from the same operative facts, their underlying legal theories and elements differ substantially such that separation of the state and federal claims is not likely to produce substantial duplication of effort by the state court and this Court.

Given the relatively early stage of these proceedings and the substantial legal differences between Plaintiff's federal and state law claims, the Court concludes that judicial

economy and convenience would be better served by a principled division between the state and federal proceedings, leaving state claims in state court and keeping federal claims in federal court.

Second, Plaintiff argues that fairness would also be better served by this Court declining supplemental jurisdiction over the state law claims because it would "streamline the issues." (Pl.'s Mem. at 10.) Plaintiff argues that because "it is difficult to allege, let alone prove, a valid civil RICO claim[,] . . . there is the possibility that the Court might grant the Defendants' proposed motion to dismiss . . . or grant summary judgment on those RICO claims, and, once again, at that time, decline supplemental jurisdiction over" the state law claims. (*Id.* at 10-11.) Because "any such relinquishment of supplemental jurisdiction . . . might not occur until mid or late 2020," and because this dispute has been ongoing for over three decades, Plaintiff argues that "fairness militates in favor of allowing all of" the state law claims to proceed immediately in state court. (*Id.* at 11.)

Defendants respond that it is unfair for Plaintiff to "disregard [her] prior representations and now try to move her closely related State law claims to another forum," thereby subjecting Defendants to "duplicative litigation" which she previously "vowed to avoid." (Defs.' Opp. at 15.) Defendants describe Plaintiff's motion as "a thinly veiled effort to shop her claims to a different forum." (*Id.*)

The Court agrees with Defendants that evidence of forum shopping would weigh against Plaintiff in considering the fairness of her request. But given the procedural history in this case—specifically, Plaintiff's effort to bring all of her state law claims in the federal action—the Court is not convinced that Plaintiff's request is driven primarily by forum shopping. Rather, Plaintiff has a legitimate interest in continuing to pursue all of her identified state law claims, including those which this Court rejected from the Proposed Second Amended Complaint, and in litigating those claims in one single action. Although the Court recognizes that Plaintiff's position regarding supplemental jurisdiction has changed,

that change in position occurred in response to a procedural change in circumstances and does not alone indicate that Plaintiff is engaging in forum shopping. Thus, the Court concludes that fairness weighs neither for nor against Plaintiff's request that the Court decline to exercise supplemental jurisdiction.

Finally, Plaintiff argues that "comity weighs strongly in favor" of declining supplemental jurisdiction because the "complicated Connecticut state law issues raised in this case should be resolved in the Connecticut state courts. (Pl.'s Mem. at 11-12 (citing *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) ("Comity reflects a proper respect for state functions . . . [and] is especially implicated when state law has not been definitively interpreted by the state courts.")).) Defendants offer no argument in opposition regarding application of the principle of comity here. Especially because this case presents complicated legal issues and because of the substantial differences in legal theory underlying the state and federal claims, the Court concludes that comity weighs in favor of Plaintiff's request.

Separately, Defendants argue that judicial estoppel bars Plaintiff from asking the Court to decline supplemental jurisdiction because she previously sought to have this Court exercise supplemental jurisdiction over her state law claims. (Def.'s Opp. at 21.) Judicial estoppel aims "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations omitted). "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* at 750.

"Courts have observed that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750 (internal quotation omitted). "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case": 1) whether "a party's later position [is] clearly inconsistent with its earlier position"; 2) "whether the party has

succeeded in persuading a court to accept that party's earlier position" such that later acceptance of a different position "would create the perception" that the court "was misled"; and 3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750-51 (internal quotations omitted). "Additional considerations" may also "inform the doctrine's application in specific factual contexts." *Id.* at 751. Defendants argue that Plaintiff should be judicially estopped from making her current request because she has "completely reversed course," she succeeded in persuading the Court to exercise supplemental jurisdiction previously, and her request would impose unfair prejudice on defendants by forcing them to relitigate issues in a new forum. (Def.'s Opp. at 22-25.)

In considering the relevant factors and the history of this case, the Court does not view Plaintiff's request as implicating the principles of judicial estoppel. Although Plaintiff's position has changed, it changed in response to circumstances which Plaintiff did not intentionally bring about, and there is no indication that Plaintiff acted in bad faith or otherwise attempted to "perver[t] . . . the judicial process" or make "improper use of judicial machinery." *New Hampshire*, 532 U.S. at 750. To the extent that Plaintiff previously sought to bring all of her state law claims in one action and continues to prioritize that goal, her position has not shifted, although, by necessity, the court in which she aims to bring those claims has changed. Moreover, as the Court discussed above, nearly the entirety of the litigation at every stage of this case has centered on Plaintiff's federal RICO claims, and thus Defendants are likely to suffer little, if any, prejudice as a result of Plaintiff's request.

Thus, Plaintiff has demonstrated that the considerations of judicial economy, convenience, and comity weigh in favor of her request, and Defendants have not demonstrated that Plaintiff should be judicially estopped from making that request. However, the Court views Plaintiff's request for a "stay" of supplemental jurisdiction "pending resolution of those Connecticut state law claims" in the State Action as a potential

opportunity to take two bites at the apple in litigating those claims. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those counts shall be dismissed from Plaintiff's federal complaint.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Decline Supplemental Jurisdiction [Doc. # 74] is GRANTED. Counts Two, Three, Four, Five, and Eight of the Second Amended Complaint are hereby dismissed. Thus Defendants' Motion to Dismiss Plaintiff's state law claims [Doc. # 82] is DENIED as moot.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of April 2020.